**Bernard GOTTFRIED, Regional Director of the Seventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellee,**

v.

**Samuel FRANKEL; et al., Respondents-Appellants.**

**Nos. 86–1278, 86–1472.**

United States Court of Appeals, Sixth Circuit.

Argued Feb. 17, 1987.

Decided May 1, 1987.

Arch Stokes, Atlanta, Ga., William K. Carmichael (argued), for respondent-appellant in No. 86–1278.

Amy Bachelder, Gen. Counsel, N.L.R.B., Detroit, Mich., Joseph E. Mayer, Asst. Gen. Counsel, John W. Hornbeck, Deputy Asst. Gen. Counsel, Ellen A. Farrell (argued), N.L.R.B., Office of the Gen'l. Counsel, Washington, D.C., for petitioner-appellee in No. 86–1278.

Amy Bachelder, Gen. Counsel, N.L.R.B., Detroit, Mich., Ellen A. Farrell (argued), Office of Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner-appellee in No. 86–1472.

Arch Stokes, Jaffe, Snider, Raitt & Heuer, Atlanta, Ga., William K. Carmichael (argued), for respondent-appellant in No. 86–1472.

Before MARTIN and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

This petition for injunctive relief was filed pursuant to section 10(j) of the National Labor Relations Act (NLRA) and arises out of a series of unfair labor practice charges filed from April to September 1985 with the National Labor Relations Board (NLRB or Board) against appellants, owners and operators of Somerset Inn (hereinafter referred to collectively as Somerset). Once a complaint was filed, and after obtaining authorization from the Board, the Regional Director filed the instant petition in the United States District Court for the Eastern District of Michigan for and on behalf of the Board. The petition asserted that the Regional Director had reasonable cause to believe that unfair labor practices had occurred in violation of section 8(a)(1), (3) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (3) and (5). Specifically, the petition alleged that Somerset had interfered with, restrained and coerced employees in the exercise of their section 7 rights,[1] had discriminated against employees because of their union activities and had unilaterally instituted changes in work conditions without providing the union an opportunity to bargain. It was further asserted that, absent temporary injunctive relief pending the final outcome of Board proceedings, an effective remedy for these violations would not be obtainable. The district court granted the Board's request in all respects, and this appeal followed.

On appeal, Somerset asserts that the district court lacked jurisdiction over the subject matter and over Somerset personally, and that the district court abused its discretion in failing to hear oral testimony and in fashioning its order for injunctive relief. Somerset also appeals from the district court's denial of its motion to stay the injunction pending appeal.

For the reasons which follow, we modify the district court's judgment, and affirm the judgment as so modified.

## I.

Somerset Inn is a hotel in Troy, Michigan which contains 250 guest rooms, two res-

---

1. 29 U.S.C. § 157. *See infra* note 4 for a de- scription of section 7 rights.

taurants and several banquet rooms. The Frankel family has owned the hotel for a number of years, but only assumed the management of the hotel in 1983. Shortly thereafter, the Frankels hired Scott Frickman as the Director of Operations to oversee renovations and other changes instituted in the hopes of revitalizing the business.

Local 24 of the Hotel Employees and Restaurant Employees International Union (Union) is the recognized collective bargaining representative for the employees at Somerset, including employees in Somerset's many departments and subdepartments such as Housekeeping, Banquet, Food and Beverage, Front Desk and Reservations. The most recent collective bargaining agreement between Somerset and the Union expired on December 31, 1984. Negotiations for a successor contract extended from August or September 1984, to February 1985, at which time the parties reached an impasse. As a result of reaching an impasse, Somerset implemented its final offer on February 22, 1985 (hereinafter referred to as the Impasse Offer). It is not alleged that Somerset bargained in bad faith during those negotiations. Rather, the record reveals that both parties bargained vigorously, and in good faith, over terms believed to be vitally important; an agreement simply could not be reached. The Union does allege, however, that Somerset engaged in other activities designed to undermine union support.

Some of the most serious allegations relate to Somerset's treatment of two members of the Union's negotiating team: Carol Bronson, the Chief Steward, one of the most active union members and a server in the Banquet Department; and Sabrina Byrd, a union steward and a washer in the Laundry Department. With respect to Bronson, the Union alleged that the day after a tough negotiation session, Scott Frickman threatened to terminate or prosecute Bronson for fraud. The Union asserts that these threats were made because of Bronson's union activities. Second, in accordance with the Impasse Offer, Somerset implemented a new seniority system— where seniority was calculated based on continuous service within each job classifi-

cation rather than with the employer—but allegedly did not implement it in every department. Bronson effectively lost at least ten years of seniority and the significant benefits attached thereto. Upon her request to be transferred back to Dining Room Service, where she had accumulated the majority of her seniority, she was informed that she had lost those years of seniority. Then, to supplement her income, Bronson accepted "pass down" assignments from other servers. Although banquet servers had previously been allowed to relinquish their work assignments, Frickman instructed the Banquet Manager to discontinue this practice after learning that Bronson's presence on the premises was directly attributable to this practice.

With regard to Sabrina Byrd, there are numerous allegations of harassment. For instance, it is alleged that the new position of Laundry Manager was primarily created to make it possible to conduct surveillance of Byrd's union activities. There is evidence that the Laundry Manager kept a diary of Byrd's activities and that Frickman wanted Byrd "out of the hotel." On more than one occasion, Frickman threatened to prosecute or fire Byrd for fraud; one such threat followed Byrd's announcement to run for steward of the Laundry Department. After becoming steward, Byrd received a disciplinary warning for conversing with the Union's business agent, and she was disciplined for failing to wear a nametag and for other minor infractions. Other similarly situated employees were not disciplined or did not receive warnings.

There are allegations that Somerset engaged in other antiunion activities as well. In April 1985, several employees decided to telephone the County Health Department to report the flooding of raw sewage in one of the kitchens. Stemming from this call, the health inspector issued a citation against Somerset. Subsequently, Somerset removed the two pay telephones reserved for employee use without first notifying the Union, allegedly in retaliation for contacting the Health Department.

On May 21, 1985, Union employees went on strike. They remained on strike until June 13, having accepted Somerset's unconditional offer to return to work. Numerous allegations of unfair labor practices arose out of Somerset's behavior immediately following the strike. It was alleged that returning strikers were required to attend lengthy orientation and training sessions, unlike their non-striking counterparts or the replacement workers who were retained. Further, all employees that had worked the first day of the strike were awarded a $100 cash bonus as part of the "Employee of the Month" award; in the past, this award was granted to only one individual, and consisted of $25 and a dinner for two at the hotel restaurant, valued at approximately $34. A picture of these employees was posted in the lobby, labelled "The Troops." In addition, Somerset unilaterally changed work rules, such as drinking, smoking and restroom privileges, without first informing the Union.

David Pardo, one of the strikers who was included in Somerset's unconditional offer to return to work, was not permitted to return but was replaced by a non-striker. Similarly, "on-call" maids Doris Littleton, Jean Vaughn, Kathy Johnson and Vickie Hardy, who had worked steadily in the weeks prior to the strike, had their hours drastically reduced since Somerset used strike replacements instead. Somerset also created two work schedules in each department subsequent to the strike: one for returning strikers, and one for non-strikers. Work was not assigned according to standard seniority since job assignments allegedly were made alternately between the two lists. As a result, Chief Steward Bronson, whose seniority had already been reduced because of the seniority changes previously implemented, was assigned virtually no work shifts. She was also informed to expect very few work assignments in the upcoming months. On July 5, 1985, Bronson resigned her position at the hotel to become business agent for the Union, stating that, because of the changes made in the work schedules, it was economically essential for her to seek full-time employment. It is alleged that she was constructively discharged by Somerset.

As previously noted, several unfair labor practice charges were filed with the Board during the course of these events. Following an investigation, the Regional Director issued a complaint against Somerset on June 27, 1985, and amended complaints on August 26 and October 11, 1985, alleging Somerset had violated section 8(a)(1), (3) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (3) and (5). The instant petition for temporary injunctive relief pursuant to section 10(j) of the NLRA was not filed by the Regional Director until December 17, 1985.

Before the district court, Somerset filed a motion to dismiss for insufficient process and for lack of subject matter jurisdiction, and also moved the court to conduct an evidentiary hearing. On February 20, the district court held oral arguments on the section 10(j) petition as well as Somerset's motions. As to the appropriateness of injunctive relief, Somerset urged that such relief would be improper because of its history of good faith bargaining, its continued adherence to the grievance and arbitration procedures, its check-off of union dues and various payments to the union fund.

The district court, on February 21, 1986, announced its findings and conclusions from the bench, and granted the Board's petition for injunctive relief. The court first noted that the parties had stipulated that Somerset had not bargained in bad faith, and the court concluded from this that the case was not a "refusal to bargain case." Although the court acknowledged Somerset's honoring of union dues check-off and participating in the grievance process, the court held that the evidence of record established reasonable cause to believe that Somerset had committed unfair labor practices with respect to its treatment of Bronson, Byrd, Pardo and the on-call maids, the removal of the telephones, the orientation and training sessions and the unilateral changes in work conditions. The court noted that the evidence showed "intimidation of employees, interference with employees in organizing for the Union, and discrimination against union activi-

ties." The court did not specify from the bench which of the unfair labor practice provisions were potentially violated by such actions, although the court found each aspect of the Board's request for injunctive relief to be "just and proper" in order to maintain the status quo pending final disposition by the Board. The court's order enjoined Somerset from engaging in various conduct, such as threatening, coercively interrogating, discouraging, or discriminating against employees for engaging in union activities, making changes in employment conditions without providing the Union an opportunity to bargain, and "[i]n any like or related manner failing or refusing to bargain collectively in good faith with the Union with respect to hours, wages and other terms and conditions of employment...." The order also required Somerset to reinstate Bronson, Pardo and the on-call maids, to restore employee access to telephones as it had existed before April 9, 1985, to restore restroom, beverage and telephone privileges as they had existed before May 21, 1985, and to post the district court's order.

The district court filed written orders on March 7, 1986, reflecting its decision to deny Somerset's motions and to grant the Board's request for injunctive relief. In its written order granting injunctive relief, the court specified that there was reasonable cause to believe that Somerset had violated section 8(a)(1), (3) and (5) of the NLRA.

Somerset appealed from these orders on March 20, 1986. On April 3, 1986, Somerset filed a motion to stay the injunction pending appeal. This motion was denied on April 22, from which Somerset filed a timely appeal. Both appeals are before this court.

## II.

### A. Jurisdiction

#### 1. Subject Matter Jurisdiction

■ Somerset's principal argument is that the district court lacked subject matter jurisdiction because the Regional Director of the Board filed this section 10(j) petition rather than the Board itself. Somerset asserts that section 10(j) requires, as a pre-

requisite to federal jurisdiction, that the Board be the named petitioner. In making this argument, Somerset relies on language differences in sections 10(j) and 10(*l*) of the NLRA, as well as an unpublished decision out of a district court for the Northern District of Alabama. *Arlook v. Armada Corp.*, No. CV82–H–1367–J (N.D.Ala. Aug. 12, 1982) [available on WESTLAW, DCT database]. We find this argument to be without merit.

Section 10(j) provides:

The *Board* shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j) (emphasis added). In contrast, section 10(*l*), which provides for injunctions against secondary boycotts and certain strikes, provides that if, after investigating the unfair labor practice charges, *the officer or regional attorney* to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, *he shall, on behalf of the Board*, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter.

29 U.S.C. § 160(*l*) (emphasis added). In the *Armada Corp.* decision, the district court reasoned that the language differences present in these two provisions warranted but one conclusion: that Congress intended

federal courts to have jurisdiction over section 10(j) petitions only when the Board filed the petition. The court was not persuaded otherwise by the fact that numerous courts reviewing section 10(j) petitions had assumed the existence of subject matter jurisdiction when the petition was filed by a Regional Director.

Unlike the court in *Armada Corp.*, we find it persuasive that Sixth Circuit cases analyzing section 10(j) petitions have been filed by a Regional Director. *See, e.g., Sheeran v. American Commercial Lines, Inc.*, 683 F.2d 970 (6th Cir.1982); *Levine v. C & W Mining Co.*, 610 F.2d 432 (6th Cir.1979). In fact, we have not discovered a section 10(j) case in any circuit which was not filed by a Regional Director. Although none of these cases address the issue presented by Somerset, we find it significant that subject matter jurisdiction has never been challenged in any of those cases. Not only have courts assumed they had subject matter jurisdiction over section 10(j) petitions filed by Regional Directors, the Board also has consistently interpreted section 10(j) as not imposing a jurisdictional bar to delegating section 10(j) filing responsibilities to Regional Directors. *See* 29 C.F.R. § 101.37.[2]

It has often been mentioned that sections 10(j) and 10(*l*) are companion statutes. *See Kobell v. Suburban Lines, Inc.*, 731 F.2d 1076, 1084 (3d Cir.1984). We believe that the language in section 10(*l*) was intended to allow a Regional Director to obtain injunctive relief without Board approval when filing for injunctive relief is mandatory under the NLRA. In contrast, the Board has discretion as to whether a section 10(j) petition will be filed; in such a circumstance, the Board must approve the filing of a section 10(j) petition. Therefore,

the language in section 10(*l*) was intended to permit a Regional Director to file a section 10(*l*) petition without Board approval; we do not believe it was designed to delineate the scope of subject matter jurisdiction in section 10(j). *Cf. Solien v. Merchants Home Delivery Serv., Inc.*, 557 F.2d 622, 627 n. 2 (8th Cir.1977).[3] The legislative history relied on by Somerset merely reiterates the language in the provisions, but sheds little light on the significance of the variance in the language. *See* H.R.Rep. No. 510, 80th Cong., 1st Sess., *reprinted in* 1947 U.S.Code Cong. Service 1135, 1163–64.

Accordingly, we hold that the district court had subject matter jurisdiction over this petition.

### 2. Service of Process

Somerset asserts that the district court lacked jurisdiction over it personally because the section 10(j) petition served upon it was not accompanied by a summons as required by Rule 4, Fed.R.Civ.P. We likewise find this argument to be without merit.

■■■ Section 10(j) proceedings are ancillary to unfair labor practice proceedings; in fact, as a prerequisite to the filing of a section 10(j) petition, a complaint alleging unfair labor practices must first be issued by the Board. Once a petition is filed, section 10(j) provides that "the court shall cause notice thereof to be served upon such person, and *thereupon shall have jurisdiction* to grant to the Board such temporary relief or restraining order as it deems just and proper." 29 U.S.C. § 160(j) (emphasis added). We believe that section 10(j) merely requires that adequate notice of the peti-

---

2. Section 101.37 provides in pertinent part:
 Whenever it is deemed advisable to seek temporary injunctive relief under section 10(j) ... the officer or regional attorney to whom the matter has been referred will make application for appropriate temporary relief or restraining order in the district court of the United States within which the unfair labor practice is alleged to have occurred....

3. In *Merchants Home Delivery Service,* the court, in noting the inevitable delay in filing a section

10(j) petition, explained that the unfair labor practice charges must first be filed and investigated, that a complaint must then be issued, and that before injunctive relief can be requested, the Regional Director must secure permission from the Board. In contrast, for an injunction under section 10(*l*), a complaint does not have to be issued first and the Regional Director does not have to secure the Board's permission before filing suit.

tion be served upon the respondent; strict adherence to Rule 4 summons specifications is not a requirement for jurisdiction over the party. It should also be noted that Rule 4 is a flexible rule which principally requires sufficient notice to the party of claims brought against it, and dismissal is not appropriate unless the party has been prejudiced. *United Food & Commercial Workers Union v. Alpha Beta Co.,* 736 F.2d 1371, 1382 (9th Cir.1984). "For this reason, a defendant's answer and appearance in an action 'should be enough to prevent any technical error in form from invalidating the process.'" *Id.* (quoting 4 C. Wright, A. Miller, M. Kane, *Federal Practice & Procedure: Civil* § 1088, at 155 (Supp.1983)).

In the instant case, Somerset was clearly served with the petition which placed it on notice of the allegations and the remedy sought. Further, since a complaint had issued in the proceedings before the Board, Somerset cannot assert that it lacked awareness of the full nature of the allegations. In addition, Somerset filed an answer and appeared in this action. Accordingly, we find no basis upon which to hold that the district court lacked personal jurisdiction over Somerset.

### B. Evidentiary Hearing

Somerset argues that the district court committed reversible error by failing to conduct an evidentiary hearing. Although the court had access to the transcript of the first three weeks of hearings before the Board as well as numerous affidavits and other documentary evidence supplied by both parties, Somerset maintains that an evidentiary hearing was imperative in order for the district court to rule on the appropriateness of section 10(j) relief. It urges that the district court did not hear both sides of the story.

As will be more thoroughly discussed below, a section 10(j) hearing is only a "reasonable cause" hearing—the Board does not have to prove, and the district court is not required to find, that unfair labor practices have occurred. *Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1083

(3d Cir.1984); *Levine v. C & W Mining Co.,* 610 F.2d 432, 435 (6th Cir.1979). In making a reasonable cause determination, the district court and this court on appeal are not supposed to resolve conflicts in the evidence. *See Fuchs v. Hood Indus., Inc.,* 590 F.2d 395, 397 (1st Cir.1979); *Squillacote v. Graphic Arts Int'l Union,* 540 F.2d 853, 860 (7th Cir.1976). The evidence available to the district court was clearly adequate to determine whether the Board had reasonable cause to believe unfair labor practices had occurred. Since the district court is not permitted to resolve conflicts in the evidence, a "complete" story is not necessarily required to make this determination. Accordingly, we conclude that the district court did not abuse its discretion in denying Somerset's request for an evidentiary hearing.

### C. Injunctive Relief

For a temporary injunction to issue pursuant to section 10(j), the district court must make two findings. First, the court must find that there is "reasonable cause" to believe that unfair labor practices have occurred. *C & W Mining Co.,* 610 F.2d at 435. This is a factual finding and may only be set aside if clearly erroneous. *Id.; Suburban Lines, Inc.,* 731 F.2d at 1084. To establish "reasonable cause," the Regional Director has a "relatively insubstantial" burden in that he need not prove that an unfair labor practice had occurred, but must only produce some evidence in support of the petition. *C & W Mining Co.,* 610 F.2d at 435. Further, the Regional Director need not convince the court of the validity of the Board's theory of liability, as long as the theory is substantial and not frivolous. *Suburban Lines, Inc.,* 731 F.2d at 1084; *Kaynard v. Palby Lingerie, Inc.,* 625 F.2d 1047, 1051 (2d Cir.1980); *Graphic Arts Int'l Union,* 540 F.2d at 858.

If the district court finds that there is reasonable cause to believe that unfair labor practices have been committed, the court must next determine whether temporary injunctive relief is "just and proper." *C & W Mining Co.,* 610 F.2d at 435. The granting of injunctive relief un-

der this "just and proper" standard, "is a matter committed to judicial discretion." *Id.* Therefore, a grant of injunctive relief made pursuant to such a finding may be set aside only upon a showing that the district court abused its discretion. *Suburban Lines, Inc.*, 731 F.2d at 1091; *Sheeran v. American Commercial Lines, Inc.*, 683 F.2d 970, 975–76 (6th Cir.1982). In making this determination, a district court must bear in mind that "section 10(j) was added to give the Board a means of preserving the status quo pending the completion of its regular procedures." *C & W Mining Co.*, 610 F.2d at 436. *See also Hood Indus., Inc.*, 590 F.2d at 397; *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 741–42 (7th Cir.1976); *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (2d Cir.1975); *Angle v. Sacks*, 382 F.2d 655, 659 (10th Cir.1967). "By the same token, the relief to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Suburban Lines, Inc.*, 731 F.2d at 1091.

■ In its brief, Somerset presents its version of the facts to support its assertion that "reasonable cause" did not exist. For instance, Somerset maintains that the majority of its actions that have been challenged were expressly authorized by the Impasse Offer. It also asserts that Byrd and Bronson had in fact committed fraud, that their versions of the facts should be considered incredible since both of them took the Fifth Amendment at the evidentiary hearing before the ALJ, and that Bronson resigned because she wanted to become business agent for the Union. Somerset also explains its reasons for replacing Pardo and the on-call maids, requiring the strikers to receive additional training, establishing independent work schedules and removing the telephones. Were Somerset's version of the facts accepted, we agree that there would be no reasonable cause to believe that unfair labor practices had occurred. However, its argument along

these lines merely establishes that there are conflicts in the evidence, not that the district court's finding of reasonable cause constituted clear error. *Accord C & W Mining Co.*, 610 F.2d at 435.

The district court held that there was reasonable cause to believe that unfair labor practices had occurred pursuant to section 8(a)(1), (3) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (3) and (5). Section 8(a)(1) provides that it is an unfair labor practice for any employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed by section 7 of the title...."[4] Section 8(a)(3) provides that it is an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage a membership in any labor organization...." Finally, section 8(a)(5) provides that an employer cannot "refuse to bargain collectively with the representatives of his employees...."

We believe that there is sufficient evidence to support the district court's reasonable cause finding with respect to violations of section 8(a)(1) and (3) of the NLRA. The facts surrounding the "effective discharge" of Bronson, the discharge of Pardo and the on-call maids, the various incidents regarding Byrd's employment, the removal of telephones, the scheduling changes and other unilateral changes in work conditions instituted subsequent to the strike, could all possibly support violations of section 8(a)(1) or (3). *See, e.g., Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 894, 104 S.Ct. 2803, 2809, 81 L.Ed.2d 732 (1984) ("constructive discharge" can violate section 8(a)(3)); *Oneida Knitting Mills, Inc. v. NLRB*, 375 F.2d 385, 388 (4th Cir.1967) (the timing of the changes in work conditions provides support for findings that changes were discriminatory, coercive and retaliatory); *NLRB v. Plastilite Corp.*, 375 F.2d 343 (8th Cir.1967) (changes in work conditions after strike found to be punishment in violation of section 8(a)(1) and (3)); *Shattuck*

---

**4.** Section 7 of the Act, 29 U.S.C. § 157, protects an employee's right to organize or assist labor organizations, to bargain collectively and to engage in concerted activities for mutual aid and protection.

*Denn Mining Corp. v. NLRB*, 362 F.2d 466, 470 (9th Cir.1966) (facts provide inference that discharge was motivated by desire to discourage union activity); *NLRB v. Dixie Gas, Inc.*, 323 F.2d 433, 434 (5th Cir.1963) (removal of many privileges immediately following strike seen as punishment for exercising rights and found to violate section 8(a)(1) and (3)).

■ However, inasmuch as the district court announced from the bench that the parties had stipulated that this was not a "refusal to bargain" case, and since the district court characterized the unilateral changes in work conditions as violations of section 8(a)(1) or (3),[5] we cannot uphold its finding made only in its written order that there is reasonable cause to believe that section 8(a)(5) was violated.[6] Accordingly, we also hold that paragraph 1(p) of the restraining order, which enjoins Somerset from "failing or refusing to bargain collectively in good faith with the Union with respect to hours, wages and of terms and conditions of employment of the employees ...," cannot be upheld as just and proper, since Somerset was never found to have refused to bargain.

Somerset challenges the remaining provisions of the injunctive order as also not being just and proper. We reject these arguments and find that the remainder of the order was properly within the court's discretion.

■ Somerset argues that injunctive relief is not just and proper because the Board delayed in filing its section 10(j) petition, and takes issue particularly with the "affirmative relief" aspects of the order. It is true that courts have held that delay is a permissible consideration in denying a section 10(j) petition, especially if the harm has already occurred and the parties cannot be returned to status quo. *See, e.g., Solien v. Merchants Home Delivery Serv., Inc.*, 557 F.2d 622, 627 (8th Cir.1977) ("We agree that delay may be considered, but only ... where the delay is of such a character that a final Board order is likely to be as effective as an interlocutory court order."). However, we find no authority for the proposition that district courts are *required* to consider the delay in filing a section 10(j) petition, or that a failure to consider the delay is a proper basis for overturning the grant of injunctive relief. Rather than requiring a consideration of the number of days or months which have passed between the issuance of a complaint and the seeking of section 10(j) relief, we believe the appropriate focus is on whether it is necessary to return the parties to status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible.

■ In the instant case, the district court did not err in concluding that relief was necessary to preserve the status quo pending the Board proceedings, despite any initial Board-created delay in filing this petition. The reinstatement of Bronson and the other union members was just and

---

5. In setting forth its findings, the court stated:
There is further complaint that after the strike unilateral changes were made in working conditions *in order to punish* the workers in that work assignments were modified, coffee privileges were abandoned, productivity standards were increased, and bathroom privileges were restricted. The claim is that all of these are violations of the National Labor Relations Act.
(Emphasis added). The court's characterization of these acts as punishment for union activity is clearly within the purview of section 8(a)(1) or (3), not section 8(a)(5).

6. We recognize that unilateral changes in work conditions can constitute a violation of section 8(a)(5). *See, e.g., NLRB v. Katz*, 369 U.S. 736, 747, 82 S.Ct. 1107, 1113, 8 L.Ed.2d 230 (1962);

*Bastian-Blessing v. NLRB*, 474 F.2d 49, 53 (6th Cir.1973); *Wald Mfg. Co. v. NLRB*, 426 F.2d 1328, 1332–33 (6th Cir.1970). However, because of the district court's findings, and the framing of the issues from the bench, we believe the court's written order announcing a potential section 8(a)(5) violation is inconsistent with its findings announced from the bench. At oral argument, the parties agreed that were there an inconsistency between the orders, the district court's oral findings would control. It is our interpretation of the court's first order that the unilateral changes in work conditions were perceived as potential section 8(a)(1) or (3) violations, not section 8(a)(5) violations. It is this inconsistency which prompts our decision not to uphold the district court's reasonable cause finding with respect to section 8(a)(5).

proper, especially in light of the evidence of a drop in union membership and the important role Bronson played in developing union support. *See Palby Lingerie*, 625 F.2d at 1053 (reinstatement of employees upheld because discharges "risked a serious adverse impact on employee interest in unionization"); *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 907 (3d Cir.1981) (district court abused its discretion in not reinstating eight union supporters in a small bargaining unit because of the potential harm to the union). Further, we believe these same considerations support the other aspects of the order. Since the district court found reasonable cause to believe that Somerset's activities were designed to discourage union membership, it is appropriate to return the parties to status quo in an attempt to counter the effects of these activities.

 Somerset also argues that the injunctive relief cannot be upheld because there were no allegations of ongoing unfair labor practices. We have previously rejected the argument that unfair labor practices must be ongoing to justify a grant of injunctive relief, since the prior activities could have lingering effects on union activity. *C & W Mining Co.*, 610 F.2d at 436. We find no reason to set aside the district court's order under this theory in the instant case.

 Finally, Somerset asserts that this is simply not a case for section 10(j) relief because of its continued interaction with the Union, its good faith negotiations, its adherence to the grievance process and similar conduct. We believe Somerset misconstrues the role of federal courts in a section 10(j) proceeding. Even if Somerset is behaving in the manner it indicates, and even if its version of the facts is eventually adopted by the Board, we must judge the appropriateness of relief based on the evidence proffered by the Regional Director. We agree with the district court that the evidence in the instant case supports both a

reasonable cause finding, and a finding that injunctive relief is just and proper.

Accordingly, the judgment of the district court is AFFIRMED as modified by this court.[7]

---

7. Because we affirm the district court's grant of injunctive relief, we decline to review Somerset's argument that the district court abused its discretion in failing to grant a stay pending appeal.