Bernard GOTTFRIED, Regional Director of the Seventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Plaintiff–Appellant,

v.

SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL UNION NO. 80, et al., Defendants–Appellees.

No. 90–1220.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1990.

Decided March 14, 1991.

Rehearing and Rehearing En Banc Denied May 1, 1991.

Ellen A. Farrell (argued), Deputy Associate Gen. Counsel, Richard A. Siegel, N.L.R.B. Office of the Gen. Counsel, Judith I. Katz, N.L.R.B. Appellate Court Branch,

Washington, D.C., Mark D. Rubin, N.L.R.B., Detroit, Mich., for plaintiff-appellant.

Donald W. Fisher, Donald W. Fisher Co., L.P.A., Toledo, Ohio, Samuel C. McKnight (argued), Klimist, McKnight, Sale, McClow & Canzano, Southfield, Mich., Robert D. Randolph, Pittsburgh, Pa., for defendants-appellees.

Before MARTIN and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

DAVID A. NELSON, Circuit Judge.

This case arises from a labor union's refusal to bargain with a construction industry employer because, allegedly, of a sister company's nonunion status. The case has been here before. See *Gottfried v. Sheet Metal Workers' Intl. Assn., Local Union No. 80*, 876 F.2d 1245 (6th Cir.1989). We held in the prior appeal that the district court did not lack authority to grant an injunction against the defendant unions pending the National Labor Relations Board's final adjudication of the employer's unfair labor practice charges. On remand, the district court decided not to grant such an injunction. Concluding that this decision represents an abuse of discretion, we shall direct that an appropriate injunction be issued.

I

Section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*), provides that after investigating charges that an unfair labor practice has occurred, a regional director of the National Labor Relations Board may petition a district court

"for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper...."

In considering a request for injunctive relief under § 10(*l*), the district court must determine whether there is "reasonable cause" to believe that unfair labor practices have occurred, and, if so, whether injunctive relief is "just and proper." See *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987), a case involving § 10(j), and *Levine v. C & W Mining*, 610 F.2d 432, 435 (6th Cir.1979), stating that the same standards apply under §§ 10(j) and 10(*l*).

A district court's analysis of "reasonable cause"—the first requirement—consists of two parts. First, the court must determine whether the theory of liability advanced by the regional director is frivolous. This is essentially a question of law, the resolution of which is subject to *de novo* review on appeal. *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir.1988). Second, the court must determine whether the regional director has produced "some evidence" in support of his petition. *Id.* Contrary to usual practice, a district court should not attempt to resolve conflicts in the evidence "if facts exist which could support the Board's theory of liability." *Id.*

In determining whether injunctive relief is "just and proper"—the second requirement that must be met before an injunction will issue pursuant to § 10(*l*)—the district court must consider whether

" 'the circumstances of a case create a reasonable apprehension that the efficacy of the Board's final order may be nullified, or the administrative procedures will be rendered meaningless.' In such cases, '[p]reservation and restoration of the status quo are then appropriate considerations in granting temporary relief pending determination of the issues by the Board.' " *Sheeran v. American Commercial Lines, Inc.*, 683 F.2d 970, 979 (6th Cir.1982) (citations omitted).

Because this evaluation is a matter "committed to judicial discretion," the district court's determination will be upheld on appeal unless it is shown that the court abused its discretion. *Frankel*, 818 F.2d at 494. Such an abuse occurs when the district court "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *Fleischut*, 859 F.2d at 30.

In the case at bar, the district court indicated that it thought the controlling issue was whether the regional director

had demonstrated "probable cause" for concluding that Local 80's termination of its relationship with Limbach Company was illegal. Relying heavily on the conclusion of an administrative law judge that no unfair labor practice had occurred, as well as on testimony by Limbach's president that no one from the defendant union talked to him about the nonunion sister company, the district court found that "probable cause" had not been shown. We do not believe that the district court properly followed the two-part analysis outlined above.

As to the question of reasonable cause, we have already held in this case that the regional director's theory of liability is not frivolous. 876 F.2d at 1247. Because the regional director did produce "some evidence" in support of his petition—for example, a note prepared by the international union for distribution by Local 80 stating that "our local union has terminated its bargaining relationship with Limbach ... [because] the company that owns Limbach also owns a non-union company"—we believe that the district court was required to find the existence of reasonable cause, as that term is used in the relevant caselaw.

■ As to the requirement that the injunction be "just and proper," the regional director makes a persuasive argument that the unions' refusal to bargain with Limbach has placed a continuing stranglehold on the company's business operations. Limbach is no longer able to compete for contracts specifying that the contractor must be a party to a collective-bargaining agreement. For Limbach to bid on contracts that could be performed with nonunion employees, moreover, would subject the company to potential withdrawal liability as far as the union pension fund is concerned. Under these circumstances, we think it manifest that an injunction is called for as "a just and proper means of restoring the pre-unfair labor practice status quo and preventing further frustration of the purposes of the Act." *Levine,* 610 F.2d at 436.

As the regional director points out, appellate courts have not been reluctant to direct district courts to issue injunctions under §§ 10(j) and 10(*l*). See, for example, *Kaynard v. Independent Routemen's Association,* 479 F.2d 1070, 1073 (2d Cir. 1973); *Sachs v. Local Union No. 48,* 454 F.2d 879, 883 (4th Cir.1972). Otherwise, the time that passes while a given case is pending on remand "more than likely[ ] will greatly diminish the curative effect of the relief." *Maram v. Universidad Interamericana de Puerto Rico, Inc.,* 722 F.2d 953, 960 (1st Cir.1983). We see no reason not to direct issuance of the appropriate injunction here.

But what injunctive relief is appropriate? The aim of an injunction under § 10(*l*) is normally "to give the Board a means of preserving the status quo pending the completion of its regular procedures." *Frankel,* 818 F.2d at 494. Courts must be mindful that "the relief to be granted is only that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Id.*

In the case at bar, the regional director's petition originally requested that the respondent unions be restrained from, among other things,

> "[r]efusing to bargain or reach agreement with Limbach Company, as a member of Sheet Metal and Air Conditioning National Association ['SMACNA'], Metropolitan Detroit Chapter, as to rates of pay, wages, hours of employment or other terms and conditions of employment...."

By the time the case came before the district court on remand, however, SMACNA and the respondent unions had already reached a new collective-bargaining agreement—an agreement from which Limbach was excluded at the insistence of the unions. On his second appearance before the district court, therefore, the regional director asked the court to order the unions to treat Limbach as a party to the new agreement. In response, the unions argued that such an injunction would be impermissible because it would require them to be bound by contract terms to which they never agreed.

We think the regional director had the better argument. Although it is true that the Board may not "compel agreement when the parties themselves are unable to agree," *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 108, 90 S.Ct. 821, 826, 25 L.Ed.2d 146 (1970), it is also true that where a party has been wrongfully excluded by a union from a collective-bargaining agreement, the NLRB may require the union to offer that party the precise arrangement from which it was excluded. See *NLRB v. Local 964, United Brotherhood of Carpenters and Joiners of America*, 447 F.2d 643, 646 (2d Cir.1971); *Graphic Arts International Union, Local 280*, 235 N.L.R.B. 1084, 1098 (1978), *enforced*, 596 F.2d 904 (9th Cir. 1979).

Limbach would have been a party to the new SMACNA agreement had the unions not insisted that it be excluded. The best way to restore the status quo *ante*, therefore, would be to require the unions to treat Limbach as a party to the new agreement, pending final adjudication by the Board.

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to grant the relief specified forthwith.