RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0134P (6th Cir.)
File Name: 01a0134p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

WILLIAM C. SCHAUB, JR.,
     *Petitioner-Appellee,*

     *v.*

WEST MICHIGAN PLUMBING
& HEATING, INC.,
     *Respondent-Appellant.*

No. 99-2369

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 99-00771—Richard A. Enslen, Chief District Judge.

Argued: November 29, 2000

Decided and Filed: February 21, 2001[*]

Before: DAUGHTREY and MOORE, Circuit Judges;
CLELAND, District Judge.[**]

_____

[*] This decision was originally issued as an "unpublished decision" filed on February 21, 2001. On April 11, 2001, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

_____

**COUNSEL**

**ARGUED:** Timothy J. Ryan, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, for Appellant. Margaret E. Luke, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Appellee. **ON BRIEF:** Timothy J. Ryan, Elizabeth Welch Lykins, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, for Appellant. Margaret E. Luke, Ellen A. Farrell, Judith I. Katz, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.    West Michigan Plumbing & Heating, Inc. ("WMP&H") appeals the district court's decision granting William Schaub, Jr., Regional Director of the Seventh Region of the National Labor Relations Board ("NLRB" or "Board"), preliminary injunctive relief pursuant to Section 10(j) of the National Labor Relations Act ("NLRA"), 29 U.S.C. §160(j), pending completion of Board proceedings alleging that WMP&H engaged in unfair labor practices.   As part of its interim injunctive relief, the district court ordered:  (1) that Mikkel Wagner, a former apprentice plumber with WMP&H who was allegedly discharged because of his union activities, be reinstated to his former position at WMP&H; (2) that a provision potentially violative of the NLRA be removed from WMP&H's employee handbook; and (3) that WMP&H "not discharge, transfer, discriminate against or interrogate any employee because they have joined or expressed interest in any labor organization."  Joint Appendix ("J.A.") at 33.

We **AFFIRM** the district court's order granting Schaub preliminary injunctive relief in this case. The district court's determination that there was "reasonable cause" to believe that WMP&H had engaged in unfair labor practices was not clearly erroneous, nor was the court's finding that Schaub's proposed injunctive relief was "just and proper" an abuse of its discretion.

## I. BACKGROUND

On October 4, 1999, William Schaub, Jr., Regional Director of the Seventh Region of the National Labor Relations Board, filed a petition for interim injunctive relief pursuant to § 10(j) of the NLRA pending completion of the Board's unfair labor practice proceedings in which it is alleged that WMP&H engaged in conduct violating Sections 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1), (3).[1] Schaub alleges that WMP&H violated the above stated provisions of the NLRA by maintaining a provision in its employee handbook encouraging the reporting of any workers who attempt to solicit other employees to join a union, by coercively interrogating its employees about their union activities, and by reassigning and eventually discharging Mikkel Wagner because of his union activities. Pending final outcome of the Board's unfair labor practice proceedings,

---

[1] Section 158(a)(1) states: "It shall be an unfair labor practice for an employer . . . to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title[.]" 29 U.S.C. § 158(a)(1). Section 157 states, in relevant part, that "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157.

Section 158(a)(3) states, in part, that "[i]t shall be an unfair labor practice for an employer . . . by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . . ." 29 U.S.C. § 158(a)(3).

Schaub's petition sought to enjoin WMP&H from discriminating against its employees so as to discourage joining a union or punish those employees who have joined a union, to reinstate Wagner to his former position as a plumbing apprentice working at job sites, and to suspend the company's use of the allegedly anti-union provision in its employee handbook.

Many of the key facts in this case are disputed. When disputed, each party's version of the facts will be discussed. Jerome Schauer, WMP&H's Vice President/Superintendent, hired Mikkel Wagner as an apprentice plumber on December 19, 1998. After about ninety days, Wagner received a fifty-cent raise in his hourly wage. Wagner claims, and WMP&H does not deny, that he received favorable comments on his work performance and that he was assigned as early as February 1999 to construction projects in which he worked unsupervised.

In Wagner's affidavit he states that, in late March 1999, he began talking with other members of his crew about his recent acceptance to Local Union No. 357 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry ("Union"). Wagner claims that he answered crew members' questions and passed out Union literature. On or about May 17, 1999, Wagner claims that his foreman, Greg Goole, asked him about the Union's pension and health care benefits. Goole claims Wagner never spoke with him about the possibility of having a union at WMP&H; instead, Goole claims that Wagner tried, on several occasions, to convince Goole to leave WMP&H to work for a Union contractor. Wagner claims that on or about May 18, 1999, the day after speaking with Goole about Union benefits, some crew members began calling him "union boy" and verbally harassing him for his union support. J.A. at 22.

On May 20, 1999, after calling in sick the previous day, Wagner was transferred to WMP&H's shop from working at the field site. The shop is located right across the street from

because the goal of a § 10(j) injunction is to achieve the status quo, and because the challenged provision has been in place in WMP&H's employee handbook for at least the last ten years, the district court should not have ordered the removal of the employee handbook provision because its existence was the status quo. WMP&H fails to understand, however, "that the status quo is the state of affairs existing before the alleged unfair labor practices took place." *Frye*, 10 F.3d at 1226. Schaub argues that the employee handbook provision itself is a violation of the NLRA in that it encourages the reporting of any workers who attempt to solicit other employees to join a union, and that to restore WMP&H to its status before the alleged unfair labor practice took place requires the removal of the suspect provision. The district court, who stated that the provision "may well violate the statute[,]" J.A. at 80, did not abuse its discretion in ordering the removal of the sentence in question.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's decision that there was reasonable cause to believe that WMP&H had committed unfair labor practices, and that Schaub's proposed injunctive relief was just and proper. We modify, however, the district court's interim injunctive order so that only the challenged sentence in WMP&H's employee handbook, and not the entire section on unions, will be removed. We **AFFIRM** the district court's decision granting a § 10(j) injunction in this case.

district court had access, it appears that Wagner was the only employee acting as a union organizer at WMP&H. As the district court stated:

> If Wagner is not reinstated, there would be no one at the company organizing for the union until the NLRB reaches a final decision on the merits, at which time they may require reinstatement of Wagner. Assuming the union's organizational efforts were developing in some way and that Wagner was making progress on behalf of the union, the absence of the only union organizer at the company for an extended period of time could irreparably harm the union's chan[c]es of organizing the employees.

J.A. at 81-82. These conclusions — that reinstatement effectuates the policies of the NLRA, helps to achieve the status quo, and combats the substantially diminished prospects of unionizing WMP&H if Wagner were not to return until after the Board reached a final resolution of this case — are supported by the evidence.

### 3. Removal of the Suspect Employee Handbook Provision

In his petition for a § 10(j) injunction, Schaub challenged only that provision of WMP&H's employee handbook which arguably encouraged employees to report to management any workers who were soliciting other employees to join a union. *See supra* note 2. Nevertheless, when granting Schaub's request for an injunction, the district court ordered WMP&H to remove the entire section of its handbook in which the challenged provision was located. At oral argument, counsel for Schaub agreed that, should we affirm the district court's decision to remove the challenged handbook provision, the district court's decision to remove an entire section from the handbook could be modified so that only the challenged sentence would be removed.

In response to the district court's decision to remove the challenged handbook provision, WMP&H argues that,

WMP&H's office. As instructed by Schauer, Wagner was to perform soldering work at the shop by himself. No one else was working at the shop at this time. Schauer states that he told Wagner that his transfer was in no way a punishment or demotion, "and that the move was part of the normal training process since all apprentices need to learn how to solder with supervision." J.A. at 40. Richard Wheeler, the employee who had been working in the shop before Wagner, had injured his arm while on the job. Schauer claims that Wagner was transferred to the job because someone had to fill in for Wheeler, and because working in the shop was a good training opportunity for apprentices to work on their soldering and welding skills, an opportunity that Wagner had not yet been given.

Schauer and Mark Dobbins, the President of WMP&H, state that, sometime after 5:00 p.m. on May 20, 1999, they conducted a regular performance review of Greg Goole. At this review, Goole told them that Wagner was disturbing him and other members of the crew by trying to "engage them in non-work related discussions, principally about union issues." J.A. at 48. Both men also claim that Goole told them that Wagner had tried to convince Goole to leave WMP&H to work for a Union contractor. Schauer claims that, prior to this discussion with Goole, he "had no knowledge that Mr. Wagner supported a union or was engaging in union activity." J.A. at 41.

The next day, Wagner's second day in the shop, his workstation was moved from the back of the shop to the garage area in the same building. From this location, Schauer could observe Wagner's work from his office across the street. Schauer claims that Wagner's workstation was moved because Wagner had complained about the heat and light in the back of the shop, and because, in light of Wheeler's recent injury, moving the workstation would allow Schauer to monitor for injuries more easily from his office window.

On May 25, 1999, Wagner's Union faxed a notice to Dobbins informing him that Wagner was a Union organizer. The next day, Schauer approached Wagner in the shop and told him that he and Dobbins wanted to speak with him in the office. Wagner claims that, when Schauer approached him in the shop that morning, Schauer was holding a piece of paper in his hand that Wagner recognized had the letterhead of his Union's Local 357 on it. Schauer claims that he never saw, nor possessed, a copy of the letter that the Union had faxed to WMP&H.

In the office, Wagner claims that Dobbins told Wagner that he had discovered that Wagner was attempting to coerce employees to leave WMP&H, and that he could not employ someone who would do such a thing. Wagner asked if he was fired and Dobbins said yes. Wagner asked if his termination had anything to do with his union activity; Dobbins said it had nothing to do with his union activity, and that he did not even want to discuss the Union. Wagner explained that he had only been answering other employees' questions about the Union, and that he had not been organizing. Wagner then claims that Dobbins asked him what other employees had been asking questions about the Union, a point which Dobbins denies.

Later that day around noon, Wagner returned his tools to the shop. He noticed that now two employees were working together in the shop, and that they were both working in the back of the shop, not in the garage as he had been asked to do.

On June 1, 1999 and July 27, 1999, the Union filed an unfair labor practice charge and an amended charge alleging that WMP&H had discriminatorily transferred, interrogated, and discharged Wagner because of his union activities. An unfair labor practice proceeding was held before an administrative law judge ("ALJ") on October 27, 1999. The ALJ held that WMP&H's employee handbook provision, as well as the company's reassigning, isolating, and discharging of Wagner, constituted unfair labor practices. Wagner's

---

### 1. General Order Enjoining Discrimination Against Employees Who Engage In Union Activities

This portion of the district court's injunction cannot be considered an abuse of discretion. The district court, citing *Eisenberg v. Wellington Hall Nursing Home, Inc.*, 651 F.2d 902, 906-07 (3d Cir. 1981), stated that this portion of Schaub's proposed relief was "just and proper because it is based on the reasonable conclusion that the effects of the company's unfair labor practices will 'linger' . . . without such an order and that employees['] ability to exercise their rights to join a union or not will be chilled if such an order is not issued." J.A. at 80. This aspect of the district court's injunction makes eminent common sense: given the transfer, isolation, and discharge of Wagner after he joined a union and engaged in discussions about the benefits of unionization with his coworkers, other employees who might have been interested in learning more about the potential benefits of joining a union will be discouraged from doing so. This relief ensures WMP&H's employees that they will not be discriminated against if they attempt to learn more about the possibility of joining a union or engage in other union activities. Arguably, if WMP&H's employees are not guaranteed the right to engage in union activities without the threat of discrimination until after the Board has finally resolved this matter, the prospects of unionizing the employees of WMP&H will be significantly diminished. This relief is aimed at effectuating the policies of the NLRA and achieving the status quo (*i.e.*, "the state of affairs existing before the alleged unfair labor practices took place[,]" *Frye v. Specialty Envelope, Inc.*, 10 F.3d 1221, 1226 (6th Cir. 1993)), and granting this relief cannot be considered an abuse of the district court's discretion.

### 2. The Reinstatement of Wagner

The district court's order holding the reinstatement of Wagner to his former position to be just and proper is not an abuse of discretion. Given the limited facts to which the

union activity, the company's argument simply shows that the facts can be interpreted in different ways. That the evidence can be interpreted differently does not make the district court's factual findings clearly erroneous. *See id*.; *Gottfried*, 818 F.2d at 494.

## B. Injunctive Relief is "Just and Proper"

The district court's decision that the requested injunctive relief was just and proper in this case can only be overturned if this court finds that decision to be an abuse of discretion. *Kobell*, 965 F.2d at 1409-10. This circuit has explained that Congress allowed for "[§] 10(j) injunctions because in some cases the enforcement of a Board order after the Board's normal processes is ineffective to undo the effects of unfair labor practices." *Fleischut*, 859 F.2d at 30. The district court must determine whether "it is in the public interest to grant the injunction, so as to effectuate the policies of the National Labor Relations Act or to fulfill the remedial function of the Board." *Id*. (quoting *Eisenberg v. Lenape Prods., Inc.*, 781 F.2d 999, 1003 (3d Cir. 1986)). The goal of a § 10(j) injunction is to preserve the status quo pending completion of the Board's unfair labor practice proceedings. *Fleischut*, 859 F.2d at 30.

The district court's grant of injunctive relief in this case had three components: 1) a general order enjoining WMP&H from discharging, transferring, interrogating, or discriminating against employees who engage in union activities or who express interest in any labor organization; 2) an order requiring WMP&H to reinstate temporarily Wagner to his former position; and 3) an order requiring WMP&H to remove the suspect language from its employee handbook. Each portion of the court's interim injunctive relief will be addressed in turn.

Union has filed exceptions to the ALJ's decision. The ALJ's decision is only a recommendation, which requires the Board's resolution of the Union's exceptions to that decision. *Kobell v. United Paperworkers Int'l Union*, 965 F.2d 1401, 1411 (6th Cir. 1992).

On November 1, 1999, the district court heard arguments on Schaub's § 10(j) petition for temporary injunctive relief pending final resolution of the unfair labor practice proceeding by the Board. The district court ruled from the bench that there was "reasonable cause" to believe that unfair labor practices had occurred, and that Schaub's proposed injunctive relief was "just and proper." J.A. at 78-82. Thus, the district court granted the interim injunction and ordered, *inter alia*, that Schaub be reinstated to his former position at WMP&H. WMP&H appealed the district court's decision granting the injunction to this court.

## II. ANALYSIS

Proceedings pursuant to § 10(j) are subordinate to the unfair labor practice proceedings to be heard before the Board. *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1988). "The district courts in their analysis under 10(j) are not to adjudicate the merits of the unfair labor practice case." *Id*. To issue a § 10(j) injunction, the district court first must find that there is "reasonable cause" to believe that WMP&H has committed unfair labor practices. *Id*. at 29. Second, if reasonable cause exists, the court must determine whether injunctive relief is "just and proper." *Id*. An injunction may be granted only if both of these steps are met.

## A. Reasonable Cause

Schaub's burden of establishing reasonable cause is "relatively insubstantial." *Id*. Schaub need not prove a violation of the NLRA nor even convince the district court of the validity of the Board's theory of liability; instead, he need only show that the Board's legal "theory is substantial and not frivolous." *Id*. (quoting *Gottfried v. Frankel*, 818 F.2d 485,

493 (6th Cir. 1987)). Whether the Board's legal theory is substantial is a question of law that we review de novo. *Kobell*, 965 F.2d at 1406-07. Schaub must also show that the facts of this case are consistent with the Board's legal theory. *Fleischut*, 859 F.2d at 29. Whether the facts are consistent with and satisfy the Board's legal theory is a question of fact we review only for clear error. *Kobell*, 965 F.2d at 1407.

An important point to remember in reviewing a district court's determination of reasonable cause is that the district judge need not resolve conflicting evidence between the parties. *See Fleischut*, 859 F.2d at 29 (stating that the appellant's appeal did not seriously challenge whether reasonable cause exists; instead, it simply showed that a conflict in the evidence exists); *Gottfried*, 818 F.2d at 494 (same). Rather, so long as facts exist which could support the Board's theory of liability, the district court's findings cannot be clearly erroneous. *Fleischut*, 859 F.2d at 29; *Gottfried*, 818 F.2d at 494.

WMP&H's position in this case is quite similar to the appellants' positions in both *Fleischut* and *Gottfried*. Rather than arguing that Schaub's legal theory is insubstantial or that the facts Wagner alleged, even if true, were unable to support that legal theory, WMP&H spends much of its brief focusing on facts that are inherently disputed in this case: most notably, whether Wagner was transferred to an isolated position and ultimately discharged because of his union activities. WMP&H claims that these decisions were not motivated by any anti-union animus and describes how the facts show that this might be true. Nevertheless, an alternative interpretation of the facts, as described by Wagner, demonstrates that the Board's theory of liability is substantial and that the facts can support the Board's theory of liability.

The facts show that WMP&H's employee handbook, which is passed out to all employees, contains a provision that arguably encourages employees to report union organizing

activities.[2] The facts show that soon after Wagner spoke with employees about his involvement with a union, he was verbally harassed and transferred from the job site, where he worked with other crew members, to a position in the company shop, where he worked by himself. The facts further show that the day after Goole reported Wagner's behavior to Schauer and Dobbins, Wagner's work station was moved from the back of the shop to the garage area, where Schauer could monitor Wagner's activities from his office window. The facts also show that, the day after Wagner's Union faxed a letter to WMP&H informing Dobbins that Wagner was a Union organizer, Wagner was discharged.

The district court may rely upon both direct and circumstantial evidence to determine the motive of the employer with respect to the challenged conduct. *NLRB v. Vemco, Inc.*, 989 F.2d 1468, 1477 (6th Cir. 1993). This circuit has also held "that the proximity in time between recent protected activity and measures taken against the employee engaged in the activity lend support to the inference of an unfair labor practice." *Jim Causley Pontiac v. NLRB*, 620 F.2d 122, 125 (6th Cir. 1980). The facts in this case clearly support the district court's finding of reasonable cause. Regardless of whether there is substantial circumstantial evidence that WMP&H knew of Wagner's union activities before he was transferred from the job site, the close proximity in time between Wagner's union-organizing activity and WMP&H's decision to move his work station and ultimately discharge him are sufficient to meet Schaub's "relatively insubstantial" burden of showing reasonable cause in this case. *Fleischut*, 859 F.2d at 29. While WMP&H has offered explanations for why Wagner was transferred and later fired in such close proximity to his engaging in protected

---

[2] The relevant handbook provision states: "if anybody should at any time cause any of our employees any trouble at their work or put them under any sort of coercive or undue harassment pressure to join a union or sign a card, our employees should let their supervisor know about it, and we will see that this is stopped." J.A. at 26.