**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**LAKEPARK INDUSTRIES,
INC., Respondent.**

No. 90–5096.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 1, 1990.

Decided Nov. 13, 1990.

Aileen A. Armstrong, Deputy Asso. Gen. Counsel, Karen L. Arndt (argued), Peter Winkler, Robert N. Herman, N.L.R.B., Office of the Gen. Counsel, Washington, D.C., Frederick Calatrello, Director, N.L.R.B. Region 8, Cleveland, Ohio, for petitioner.

William L. Hooth (argued), Fitzgerald, Hodgman, Cox, Cawthorne & McMahon, Troy, Mich., for respondent.

Before MARTIN, RYAN and SUHRHEINRICH, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

The National Labor Relations Board seeks enforcement of its order finding respondent Lakepark Industries, Inc. in violation of sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3). The Board also found that Lakepark had violated section 8(a)(1) of the National Labor Relations Act by engaging in surveillance of union activities, assigning more onerous work to employees in reprisal for union activity, threatening employees with discharge or other unarmed reprisal for engaging in union solicitation, and threatening employees with plant closure. These findings are not at issue here. The Board adopted with modification the administrative law judge's finding that Lakepark violated sections 8(a)(1) and (3) of the Act by discriminatorily laying off 31 employees on April 1, 1987, and by discriminatorily discharging Charles Wolfenbarger on December 4, 1987. 293 N.L.R.B. No. 52 (1989). Lakepark claims that the Board's decision with respect to each violation is not supported by substantial evidence in the record.

Lakepark Industries, Inc. operates a pressing and stamping operation in Greenwich, Ohio. Lakepark is a wholly owned subsidiary of Midway Products, Inc., which has a plant in Monroe, Michigan. Midway also owns P & A Industries, located in Findlay, Ohio. All three plants are controlled from Midway corporate headquarters in Monroe and engage in similar operations. It is quite common for Midway to transfer the work of producing different items from one plant to another. All three plants perform stamping operations so that transferring production simply means relocating dies, raw materials and packaging. Midway employees are represented by the United Auto Workers. Employees at Lakepark and P & A are not organized.

The present controversy arises from organizational activity conducted by the International Union, Allied Industrial Workers of America, AFL-CIO at Lakepark. On March 25, Union International Representative Joseph Szumski met with Oscar Bennett, a Lakepark employee, to discuss organizing the plant. Additional meetings were held involving the entire bargaining unit on Friday, March 27, and Saturday, March 28, at a local motel. On Monday, March 30, Szumski sent a telegram to Lakepark Plant Manager Larry Higgs advising him of the names of seven individuals who were members of the Union's organizing committee. On Wednesday, April 1, Szumski sent Higgs a similar telegram in which he disclosed the names of six additional employees as members of the organizing committee. The originals of these mailgrams were sent to Midway's Corpo-

rate Manufacturing Manager, Jerry Graham, in Monroe.

On April 1, Lakepark permanently laid off 31 of its 68 production and maintenance employees. Lakepark contends that these lay-offs were necessary because a number of production runs were being transferred to Midway's other plants due to a quality control problem at Lakepark. In late September and early October, Lakepark began to recall those individuals who had been laid off in April. Those who were brought back were classified as probationary employees, even if they had completed their normal sixty-day probationary period of employment before the April 1 layoff.

Charles Wolfenbarger, who had been laid off on April 1, was rehired on October 13. Wolfenbarger had been on the list of union organizers sent by Szumski to Higgs on March 30. The incident which resulted in Wolfenbarger being discharged occurred on December 4, 1987. On that day Wolfenbarger was operating a press containing a die that produced right and left shock towers. While Wolfenbarger was operating this press, a piece of welding rod, normally used to clear away scrap metal that accumulates around the die, became embedded in a finished part and in the die. Wolfenbarger testified that he did not know how the piece of rod got into the die. An hour after the incident, the plant superintendent noticed the defective part and questioned Wolfenbarger about the incident. Wolfenbarger was later discharged for being an unsatisfactory probationary employee.

With respect to the lay-offs which occurred on April 1, the administrative law judge found and the Board agreed that Lakepark failed to rebut the General Counsel's prima facie case of discriminatory layoff. The Board found that, given the administrative law judge's finding of a background of antiunion animus on the part of Lakepark, the timing of the layoff two days after the Union sent Lakepark a telegram informing it of organizing activities, and Lakepark's general knowledge of the Union's organizing activities, the General Counsel had met her initial burden. *See NLRB v. E.I. DuPont De Nemours*, 750 F.2d 524, 529 (6th Cir.1984) (Antiunion motivation reasonably may be inferred from a variety of factors).

Where it is shown that an employer's opposition to union activity was a motivating factor in its decision to lay-off or discharge employees, those actions will be found to have violated the Act unless the employer demonstrates that it would have taken the same actions even in the absence of the protected conduct. *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 398, 103 S.Ct. 2469, 2472, 76 L.Ed.2d 667 (1983). Lakepark argues on appeal that the administrative law judge incorrectly rejected its proffered reasons for the April 1 layoff. Lakepark contends that the April 1 layoffs were due to problems of quality control and workforce stability at the Lakepark facility. In rejecting this claim, the administrative law judge found credible the testimony of former assistant plant manager, John L. Drossman. Drossman testified that plant manager Higgs told him that the Company wanted to see if a loss of jobs would have any impact on the Union organizing effort. Drossman further testified that Higgs had told him that the employees should be told that the layoff was permanent because temporarily laid-off employees could vote in a representation election. The administrative law judge discredited the testimony of Higgs and Midway's corporate manufacturing manager, Jerry Graham, which Lakepark offered to support its "quality control" justification for the April 1 layoffs. Lakepark argues that these credibility determinations are not supported by the record.

It is a well-established rule that it is "the function of the ALJ to resolve credibility problems." *NLRB v. Downslope Industries, Inc.*, 676 F.2d 1114, 1116 (6th Cir.1982). As a result, this Court will not normally substitute its judgment for that of the Board or administrative law judge who has observed the demeanor of the witnesses. *NLRB v. Baja's Place*, 733 F.2d 416, 421 (6th Cir.1984). It appears that the administrative law judge's credibility findings are consistent with a reasonable reading of the record. *See NLRB v.*

*Publishers Printing Co.*, 650 F.2d 859, 860 (6th Cir.1981). Accordingly, we find no basis for overturning the credibility determination of the administrative law judge. We likewise find that the decision of the Board finding a violation of 8(a)(1) and (3) of the Act is supported by substantial evidence.

With respect to the discharge of Wolfenbarger, it is well-settled that an employer may not be motivated by antiunion animus in the discharge of an employee. *Transportation Management Corp.*, 462 U.S. at 398, 103 S.Ct. at 2472. Lakepark asserts that Wolfenbarger was discharged for legitimate reasons. Specifically, Lakepark contends that Wolfenbarger was discharged for violating established safety rules by leaving the welding rod in the die. The Board found that the General Counsel established a prima facie showing of discrimination based on the administrative law judge's findings that Lakepark had anti-union animus, had been informed by the Union that Wolfenbarger was a union supporter, and had previously threatened Wolfenbarger with reprisal for union activities. Because Lakepark offered shifting reasons for the discharge, the administrative law judge found and the Board agreed that Lakepark failed to establish a nondiscriminatory reason for the discharge. There appears to be substantial evidence in the record as a whole to support the conclusion of the Board that Wolfenbarger was discriminatorily discharged. *See Universal Camera Corporation v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951); *NLRB v. Magnetics Int'l, Inc.*, 699 F.2d 806 (6th Cir.1983). Lakepark has failed to demonstrate how this incident was of a more serious nature than previous "mis-hits" and "dry die runs," none of which had resulted in employee discharge.

Consistent with the foregoing, the petition for enforcement of the Board's order is hereby granted.