William C. **SCHAUB, Jr., Regional Director of the Seventh Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,**

v.

**SPEN–TECH MACHINE CORP., Respondent.**

No. 96–CV–70964.

United States District Court, E.D. Michigan, Southern Division.

April 19, 1996.

Joseph P. Canfield, Detroit, Michigan, for Petitioner.

Kendall B. Williams, Gary Spinning Casey, Detroit, Michigan, for Respondent.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On March 1, 1996, the Petitioner, William C. Schaub, Jr., filed a Petition for Preliminary Injunction pursuant to § 10(j) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(j), which authorizes him, in his capacity as a regional director of the National Labor Relations Board (NLRB), to seek injunctive relief from a federal court for an alleged unfair labor practice.[1] Noting that a hearing involving his dispute with the Respondent, Spen–Tech Machinery Corp., has been scheduled for May 14, 1996 before an Administrative Law Judge of the NLRB, Schaub requests appropriate injunctive relief from this Court for alleged violations of § 8(a)(1), (3) and (5) of the NLRA, 29 U.S.C. § 158(a)(1), (3), (5), by Spen–Tech.

## I.

The underlying dispute arises out of events that occurred between September 1995 and January 1996. Schaub has produced two affidavits from Steven S. Ridley who was employed by Spen–Tech from November 28, 1994 until January 19, 1996. According to these affidavits, Ridley contacted a representative of the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) some time around September 22, 1995 regarding the probability of obtaining union representation for the employees at Spen–Tech. Following a meeting with another UAW representative on October 17, 1995, Ridley and a co-worker distributed union authorization cards to the other Spen–Tech employees. Less than a week later (October 23, 1995), Ridley and nine co-workers met with representatives of the UAW and confirmed their desire to have the Union file a petition with the NLRB to represent the Spen–Tech employees. Acting upon their request, the UAW filed a formal application to represent the interests of the Spen–Tech workers with the NLRB on October 26, 1995, with the Company being forwarded a telefacsimile copy on the same day, and a second copy by certified mail four days later (October 30, 1995).

Schaub alleges that Spen–Tech engaged in unfair labor practices between October 30, 1995 and January 19, 1996, in violation of the NLRA when it intimidated its employees by threatening plant closings, halting new construction, unilaterally discontinuing certain fringe benefits (i.e., use of Company telephones and employer-provided coffee), suggesting that they seek other employment, publicly discussing the possibility of discontinuing Christmas bonuses, creating an impression of surveillance of employees' union-

---

1. Section 10(j) provides in relevant part:
   The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person resides or transacts business, for appropriate temporary relief or restraining order.
   29 U.S.C. § 160(j).

related activities, threatening an employee with physical violence, laying off or discharging workers, and subcontracting work that could have been performed by its employees. All of these allegations have been vehemently denied by Spen–Tech.

## II.

■ A district court must make a two-part inquiry in determining whether to grant injunctive relief under § 10(j) of the NLRA. *Calatrello v. Automatic Sprinkler Corp.*, 55 F.3d 208, 212 (6th Cir.1995) (citing *Frye v. Specialty Envelope, Inc.*, 10 F.3d 1221, 1224–25 (6th Cir.1993)). First, the court must determine whether there exists "reasonable cause" to believe that the alleged unfair labor practices have occurred. Second, if such a reasonable cause does exist, the court must then decide whether injunctive relief would be "just and proper." *Automatic Sprinkler*, 55 F.3d at 212 (citing *Specialty Envelope*, 10 F.3d at 1224–25). If the district court arrives at a negative answer to either question, the court must deny injunctive relief.

### A. "Reasonable Cause"

"To establish 'reasonable cause," the [Petitioner] bears a 'relatively insubstantial' burden." *Automatic Sprinkler*, 55 F.3d at 212 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987)). He "only need produce *some* evidence in support of the [P]etition." *Id.* (emphasis added). On the other hand, a petitioner need not convince the court of his theory of liability. Rather, he must merely demonstrate that his " 'theory is substantial and not frivolous.' " *Id.* (quoting *Frankel*, 818 F.2d at 493).

In the case at bar, Schaub maintains that Spen–Tech has violated § 8(a)(1), (3), and (5) of the NLRA, all of which will now be evaluated by the Court:

1. Alleged Violation of § 8(a)(1)

Section 8(a)(1) provides, in relevant part, that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title." 29 U.S.C. § 158(a)(1). The Supreme Court has declared that an employer violates § 8(a)(1) if it interferes with the employees' organizational activities by threatening to close its plant. *Textile Workers Union v. Darlington Mfg. Co.*, 380 U.S. 263, 274 n. 20, 85 S.Ct. 994, 1001 n. 20, 13 L.Ed.2d 827 (1965). In addition, the Sixth Circuit Court of Appeals (Sixth Circuit) has held that an employer violates § 8(a)(1) when it is motivated by its opposition to union activity to (1) discharge or lay off employees, *NLRB v. Lakepark Indus., Inc.*, 919 F.2d 42, 44 (6th Cir.1990) [2], (2) engage in conduct that makes collective bargaining appear to employees to be a futile exercise, *NLRB v. Centra, Inc.*, 954 F.2d 366, 373 (6th Cir.1992), (3) substantially reduce Christmas bonuses that had been consistently given during previous years, *NLRB v. McCann Steel Co.*, 448 F.2d 277, 279 (6th Cir.1971), or (4) remove telephones that had previously been available for employees' use, *Gottfried v. Frankel*, 818 F.2d 485, 494 (6th Cir.1987). Finally, the Sixth Circuit has declared that a petitioner may rely upon the "proximity in time between the protected activity and the discharge ... as an indicia of the [employer's] unlawful motivation." *JMC Transport, Inc. v. NLRB*, 776 F.2d 612, 620 (6th Cir.1985).

The NLRB has also found § 8(a)(1) violations, in which employers have threatened to halt new construction and made suggestions to any displeased employees that they should find employment elsewhere, *Kroger Co.*, 311

---

**2.** It should be noted that in resolving the issues within this Petition, it is irrelevant that Spen–Tech advances a neutral explanation for its layoffs of numerous employees. For, as the Sixth Circuit noted in *Automatic Sprinkler*, " 'the district court need not concern itself with resolving conflicting evidence if facts exist which could support the Board's theory of liability,' " *Automatic Sprinkler*, 55 F.3d at 212 (quoting *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir.1988)), "as long as the theory is substantial and not frivolous." *Automatic Sprinkler*, 55 F.3d at 212.

In addition to actual layoffs which violate § 8(a)(1), the Sixth Circuit has held that an employer's acceleration of layoffs, *Dawson Carbide Indus. v. NLRB*, 782 F.2d 64, 65–66 (6th Cir. 1986), and threats of layoffs in the event of a successful election of a union as the employees' representative, *Peabody Coal Co. v. NLRB*, 725 F.2d 357, 362 (6th Cir.1984), would violate § 8(a)(1).

NLRB 1187, 1993 WL 291714 (1993), or threatened to eliminate previously issued coffee services, *Hertz Corp.*, 316 NLRB 672, 1995 WL 102776 (1995).

Based on the foregoing precedents, the Petitioner has provided this Court with sufficient evidence which demonstrates that "reasonable cause" exists to believe that Spen–Tech engaged in conduct proscribed by § 8(a)(1) of the NLRA. In support of his petition, Schaub supplied documents to this Court which indicate that Spen–Tech had (1) threatened to close the plant (Ridley Aff. Nov. 27, 1995 at 9, (2) discharged Ridley because of his union-related activities (Schaub's Mem. at 3), (3) laid off numerous employees (Ridley Aff. Nov. 27, 1995 at 17), (4) declared, through its President, that it would never recognize the UAW as an employee representative (*Id.* at 11), (5) threatened to eliminate Christmas bonuses (*Id.* at 17), (6) removed telephones that had previously been made available for employee use (*Id.* at 8), (7) attempted to cancel the construction of an addition to the plant (*Id.* at 7), (8) suggested that Ridley find another job if he was dissatisfied with his working conditions at Spen–Tech (*Id.* at 10), and (9) stopped supplying coffee to its employees (*Id.* at 15). Each one of these allegations[3] facially supports Schaub's claim that Spen–

Tech violated § 8(a)(1) and creates a "reasonable cause" to believe that the alleged unfair labor practices in violation of § 8(a)(1) had occurred.

Finally, Spen–Tech has provided alternative explanations for much of its challenged conduct.[4] It should be recalled, however, that Schaub's burden in the instant Petition is " 'relatively insubstantial.' " *Automatic Sprinkler*, 55 F.3d at 212 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987)). He need not convince the court of the merits of his theory of liability. *Id.* Moreover, the " 'the district court ... [should not] concern itself with resolving conflicting evidence if facts exist which *could* support the Board's theory of liability,' " *Automatic Sprinkler*, 55 F.3d at 212 (quoting *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988)) (emphasis added). Rather, he "only need produce *some* evidence in support of the [P]etition," *id.* (emphasis added), in order to demonstrate that his " 'theory is substantial and not frivolous.' " *Id.* (quoting *Frankel*, 818 F.2d at 493).

■ As the foregoing discussion indicates, Schaub has provided adequate evidence to support his theory. Furthermore, the Sixth Circuit has indicated that it is permissible to rely upon direct and circumstantial evidence

---

**3.** Schaub has made additional allegations that do not satisfy the "reasonable cause" minimum standards. Specifically, he has asserted that Spen–Tech created an impression of surveillance of union activity and threatened an employee with physical violence. However, Schaub has failed to provide adequate support for these claims against Spen–Tech.

In support of the former claim, Schaub cited *Athens Disposal Co.*, 315 NLRB 87, 1994 WL 543134 (1994), which contains facts and legal conclusions that are distinguishable from the case at bar. *Athens Disposal*, which involved agents of the employer who had been accused of photographing the employees' during union meetings, is inapposite to this case.

As for Schaub's latter claim, he cited *Wayne W. Sell Corp.*, 281 NLRB 529, 1986 WL 54369 (1986), which involved an employer's threats to use physical violence against an employee who was engaged in protected labor activities. However, Schaub has only supplied evidence that an employee was described as a "sissy" by a Spen–Tech management officer, (Ridley Affidavit, Nov. 27, 1995 at 13) which does not rise to the level of

*Wayne W. Sell Corp.* Accordingly, these two allegations will not be examined or evaluated because, in the judgment of the Court, the evidence does not support Schaub's contention that there is a reasonable cause to believe that Spen–Tech's alleged conduct constituted violations under § 8(a)(1).

**4.** For example, Spen–Tech has provided a version of the facts that presents the following reasons for some of its challenged conduct: the layoffs were motivated by economic necessity (Spen–Tech's Resp. at 3); one of the employee telephones was removed because of its inconvenient location (*Id.* at 4); former employee Ridley was discharged because of conduct not protected by the NLRA (*Id.*); punching the time clock during lunch was a longstanding though unenforced rule (*Id.* at 5); and Spen–Tech management may have expressed concern about the cost of coffee, though it continues to provide it to employees (*Id.*). Whatever the merit of Spen–Tech's assertions, resolutions of conflicting evidence are not to be determined by this Court in the instant Petition. Rather, these evidentiary findings must await hearing before the NLRB, now scheduled for May 14, 1996. *See* text accompanying note 4.

to determine the motive of the employer with respect to the challenged conduct. *See NLRB v. Vemco, Inc.,* 989 F.2d 1468, 1477 (6th Cir.1993) (citing *Turnbull Cone Baking Co. v. NLRB,* 778 F.2d 292, 297 (6th Cir. 1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986)). Utilizing the rationale in *JMC Transport, see* 776 F.2d at 620, this Court concludes that it is appropriate to consider evidence of Spen–Tech's alleged violations which, according to Schaub, began on the same day of its receipt of a copy of the UAW's petition to the NLRB. (Ridley Aff. Nov. 27, 1995 at 6.) The proximity in time between the employees' protected labor activities and Spen–Tech's alleged violations is a prima facie "indicia of [Spen–Tech's] unlawful motivation," *JMC Transport,* 776 F.2d at 620, regardless of the Company's ability to proffer ostensibly neutral explanations for its challenged conduct.

### 2. Alleged Violations of § 8(a)(3)

The pertinent portions of Section 8(a)(3) provide that it is an unfair labor practice for an employer to discriminate "in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). A violation of this statute involves " 'a discharge or other adverse action that is based in whole or in part on antiunion animus.' " *Vemco, Inc.,* 989 F.2d at 1476–77 (quoting *NLRB v. Transportation Management Corp.,* 462 U.S. 393, 401, 103 S.Ct. 2469, 2474, 76 L.Ed.2d 667 (1983)). Thus, § 8(a)(3) is violated "if 'the employee's protected conduct [under section

7 of the NLRA is] a substantial or motivating factor in the adverse action.' "[5] *Id.* (quoting *Transportation Management Corp.,* 462 U.S. at 401, 103 S.Ct. at 2474). The Sixth Circuit has noted that, in the context of so-called "mass layoffs,"[6] an employer's general knowledge of an employees' union-related activities will suffice to establish a § 8(a)(3) violation if this knowledge triggers the layoff. *Id.* at 1478. This rule applies equally to a situation in which the employer lays off or discharges employees who are supportive and opposed to union representation. *See id.* (quoting *Birch Run Welding & Fabricating, Inc. v. NLRB,* 761 F.2d 1175, 1180 (6th Cir. 1985)).

In 1990, the Sixth Circuit declared that the provisions under § 8(a)(3) had been violated when employees were discharged for their union-related activities even though the employer presented evidence that the contested layoffs were caused by inadequate work performance and considerations of work force stability. *NLRB v. Lakepark Indus., Inc.,* 919 F.2d 42, 44–45 (6th Cir.1990).

In this case, Schaub has alleged that Spen–Tech laid off numerous employees in early November 1995 shortly after its receipt of a certified copy of the UAW's petition to the NLRB. (Ridley Aff. Nov. 27, 1995 at 16, Spen–Tech's Resp. at 3.) Although Spen–Tech has provided nondiscriminatory explanations for its challenged conduct, such evidence is irrelevant to the disposition of the instant petition. The limited responsibility of this Court is merely to determine if Schaub has supplied *some* evidence to support his legal theory, and not

5. The Sixth Circuit in *Vemco* also noted that "[b]ecause a discriminatory termination or layoff interferes with or coerces employees in the exercise of their section 7 [of the NLRA] rights, a breach of section 8(a)(3) *automatically violates* section 8(a)(1)." *Vemco,* 989 F.2d at 1476 (emphasis added). Thus, Spen–Tech's alleged violations of § 8(a)(3) should also be considered along with the claimed violations under § 8(a)(1) that have been cited by Schaub in his petition to this Court.

6. The language in *Birch Run Welding & Fabricating, Inc. v. NLRB,* 761 F.2d 1175, 1180 (6th Cir.1985), clarifies the term "mass layoff" which was subsequently used by the court in *Vemco.* Birch Run involved "general lay-offs" in which "some employees who actually op-

posed the union ... were laid-off with their pro-union counterparts." *Id.* The court stressed that "the theory can be valid even though not all union adherents were laid-off," *id.,* and added that "the theory can be valid even though not all union adherents were laid-off." *Id.* Finally, the court explained that "[t]he rationale underlying this theory is that general retaliation by an employer against the work force can discourage the exercise of section 7 [of the NLRA] rights just as effectively as adverse action taken against only known union supporters." *Id.* Thus, if this Court utilized either party's version of the facts, the theory which has been supplied by the Sixth Circuit in *Birch Run* seems imminently relevant to the instant Petition.

to resolve issues of conflicting evidence. *See Automatic Sprinkler*, 55 F.3d at 212 (quoting *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir.1987), *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 29 (6th Cir. 1988), *Frankel*, 818 F.2d at 493)). Based on Schaub's proffered evidence, "reasonable cause" exists to believe that Spen–Tech violated § 8(a)(3) when it laid off some of its employees in early November.

■ Spen–Tech's proffered explanation for discharging Ridley is only relevant to issues in this case, in so far as it relates to a determination of whether Spen–Tech's decision was based *"in part* on antiunion animus." *Vemco, Inc.*, 989 F.2d at 1476–77 (emphasis added). Moreover, it does not matter that Schaub has not presented any direct evidence of Spen–Tech's anti-union animus. It is sufficient for the purpose of this controversy that Schaub has provided this Court with circumstantial evidence of Spen–Tech's unlawful motivations. *See Vemco, Inc.*, 989 F.2d at 1477 (citing *Turnbull Cone Baking Co. v. NLRB*, 778 F.2d 292, 297 (6th Cir.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2277, 90 L.Ed.2d 720 (1986)). In particular, the proximity in time between Ridley's protected union-related activities and Spen–Tech's alleged unfair labor practices is

an "indicia of [the Company's] unlawful motivation." *JMC Transport*, 776 F.2d at 620.

■ With regard to Schaub's claim that Spen–Tech's subcontracting activities violated § 8(a)(3), there does not exist "reasonable cause" to believe that the subcontracting activity constituted an unfair labor practice in violation of § 8(a)(3). The Sixth Circuit affirmed a finding of a § 8(a)(3) violation where an employer, in order to discourage employees' union-related activity, subcontracted work that had *historically* been performed by its own employees, *NLRB v. White Superior Div., White Motor Corp.*, 404 F.2d 1100, 1102 (6th Cir.1968) (emphasis added). Schaub has asserted that Spen–Tech subcontracted work which had been historically performed by Spen–Tech employees (Schaub's Mem. at 17.). However, he has provided evidence which merely indicates that Spen–Tech subcontracted unit work (*Id.* at 14,), without any information as to Spen–Tech's past practice of subcontracting.[7] Based on the Sixth Circuit's narrowly worded holding in *White Motor Corp.*, Schaub has not met its "insubstantial burden" of showing that "reasonable cause" exists to believe that Spen–Tech's subcontracting activities constituted an unfair labor practice in violation of § 8(a)(3).[8]

---

**7.** The Supreme Court has indicated that under certain circumstances, subcontracting is within the scope of mandatory bargaining. In *Fibreboard Corp. v. NLRB*, 379 U.S. 203, 214–15, 85 S.Ct. 398, 404–05, 13 L.Ed.2d 233 (1964), the Court explicitly held that "[w]e are thus now expanding the scope of mandatory bargaining to hold, as we do now, that the type of 'contracting out' involved in this case—the replacement of employee in the existing bargaining unit with those of an independent contractor to do the same work under similar conditions of employment—is a statutory subject of collective bargaining under § 8(d)." *Id.* at 215, 85 S.Ct. at 405. Nonetheless, the Court carefully limited its holding to the type of subcontracting involved in the case before it. *Id.* In *Fibreboard*, the employer had merely replaced its own employees with workers from an independent contractor. The replacement employees worked on the employer's premises under similar working conditions. *Id.* at 213, 85 S.Ct. at 404. However, this is not the case which has been alleged by Schaub in the instant matter.

**8.** Spen–Tech, by contrast, has asserted that it has "always subcontracted various portions of its work." (Spen–Tech's Br. Opp'n Schaub's Mot.

at 3). While resolving the conflicting evidence would be determinative of whether a violation of the NLRA had occurred with respect to Spen–Tech's subcontracting activities, such a finding, as has been previously discussed, is beyond the scope of the role of this Court in deciding the instant Petition. It suffices to note for the purposes of this case that Schaub has failed to provide even "some evidence" to support its theory that Spen–Tech's subcontracting activities violated § 8(a)(3).

Schaub has also asserted that Spen–Tech's "revocation of employee benefits" also constituted an unfair labor practice in violation of § 8(a)(3). (Shaub's Mem.P.Law Supp.Pet. at 14.) Nevertheless, Schaub has failed to clearly enunciate the precise "benefits" to which he refers. To the extent that the "employee benefits" include the employee telephones and coffee, these concerns have been adequately addressed in the discussion of Spen–Tech's alleged violation of § 8(a)(1). To the extent that these "benefits" refer to anything else, he has provided no evidence to support his claim.

### 3. Alleged Violations of § 8(a)(5)

■ Section 8(a)(5) of the NLRA provides in pertinent part that it shall be an unfair labor practice for an employer "to refuse to bargain collectively with the representatives of his employees." 29 U.S.C. § 158(a)(5). The Sixth Circuit has "recognized that unilateral changes in work conditions can constitute a violation of section 8(a)(5)." *Gottfried v. Frankel,* 818 F.2d 485, 495 n. 6 (6th Cir. 1987) (citing *NLRB v. Katz,* 369 U.S. 736, 747, 82 S.Ct. 1107, 1113–14, 8 L.Ed.2d 230 (1962), *Bastian–Blessing v. NLRB,* 474 F.2d 49, 53 (6th Cir.1973), *Wald Mfg. Co. v. NLRB,* 426 F.2d 1328, 1332–33 (6th Cir. 1970)). However, the Sixth Circuit has also declared more narrowly that an employer's unilateral change of existing employment conditions violates § 8(a)(5) only where the Company is subject to a duty to bargain with a collective bargaining agent. *Peabody Coal v. NLRB,* 725 F.2d 357, 365 (6th Cir.1984). Specifically, the Sixth Circuit declared that "[i]t is the election—the choice of the union as the employees' bargaining representative—that gives rise to the employer's duty to bargain." *NLRB v. Allied Prod. Corp.,* 548 F.2d 644 (6th Cir.1977). Despite the Sixth Circuit's declaration in *Allied Products,* the Supreme Court has explicitly stated that, in addition to a valid election, "possession of cards signed by a majority of the employees authorizing the union to represent them for collective bargaining purposes" could also subject an employer to a duty to bargain

collectively. *NLRB v. Gissel Packing Co.,* 395 U.S. 575, 597, 89 S.Ct. 1918, 1931–32, 23 L.Ed.2d 547 (1969). Although the decision in *Allied Products* was rendered in 1977, this Court is unaware of any decision within this Circuit or by the Supreme Court which has implicitly or explicitly narrowed or overruled *Gissel Packing.* Accordingly, the *Gissel Packing* standard must control the disposition of this dispute. Finally, it should be noted that the employer's motivation is irrelevant to the determination by this Court as to whether the Company violated § 8(a)(5) by making unilateral changes to employment conditions while it was under a duty to bargain. The Sixth Circuit has clearly stated that "[p]roof of violation of § 8(a)(5) by showing unilateral changes may not be rebutted by proof of the employer's good faith or the absence of anti-union animus." *Allied Products,* 548 F.2d at 652.

Applying the foregoing standards to the instant case, there exists "reasonable cause" to believe that Spen–Tech violated § 8(a)(5) when it made unilateral changes in employment conditions while it was subject to a duty to bargain. Schaub has presented evidence that a majority of Spen–Tech employees signed UAW authorization cards. (Ridley Aff. Nov. 27, 1995 at 4.)[9] Spen–Tech, therefore, became subject to a duty to bargain around October 19, 1995. (*See* Ridley Aff. Nov. 27, 1995 at 4.) Any unilateral changes in employment terms or conditions

9. There remains some ambiguity as to the precise number of Spen–Tech employees who signed UAW authorization cards. Ridley's affidavit of November 27, 1995 indicates that cards were distributed to an unspecified number of employees at Spen–Tech. (Schaub's Mem.P.Law A.Supp.Pet. at 3–4.) On the other hand, the same affidavit clearly indicates that 10 Spen–Tech employees attended a meeting with agents of the UAW, at which time they confirmed their desire to have the union represent their interests. (*Id.* at 4.) Since the parties' factual accounts suggest that Spen–Tech had a total of 14 employees, 10 would constitute a majority of the work force.

Although Spen–Tech has argued that at least three of the cards were obtained under questionable circumstances, (Spen–Tech's Br. at 8) this Court should not attempt to resolve any issues arising from conflicting evidence. Rather, this Court should only seek to determine whether Schaub has provided some evidence to support

his claim. Based upon the foregoing, this Court finds that Schaub has provided some evidence to support his claim that a majority of Spen–Tech employees had signed UAW authorization cards.

It should also be noted that even if a majority of employees had not signed UAW authorization cards, the election of the UAW on December 14, 1995 would have triggered Spen–Tech's duty to bargain. Even though the election remained contested, Spen–Tech's unilateral changes made subsequent to the election would constitute violations of § 8(a)(5). *See Allied Products,* 548 F.2d at 653. Because the Petitioner has provided evidence that Spen–Tech discharged Ridley on January 19, 1996 (Ridley Aff. Mar. 13, 1996 at 1), there would still exist "reasonable cause" to believe that Spen–Tech had violated § 8(a)(5) by unilaterally changing an employment term or condition while it was subject to a duty to bargain. *See* discussion *infra* (elaborating the standard governing § 8(a)(5) violations).

made thereafter by Spen–Tech consequently violated § 8(a)(5). Schaub has presented evidence that Spen–Tech (1) removed employee telephones (Ridley Aff. Nov. 27, 1995 at 8), (2) curtailed employer-provided coffee (*Id.* at 15), (3) promulgated new rules which prohibited employees from talking and required them to punch the time clock at lunch (*Id.* at 12, 14), (4) laid off numerous employees (*Id.* at 16) and (5) discharged Ridley (Ridley Aff. Mar. 13, 1996 at 1)—all subsequent to becoming subject to a duty to bargain.[10] Based on an assessment of the evidence, there exists "reasonable cause" to believe that Spen–Tech engaged in unfair labor practices in violation of § 8(a)(5) by unilaterally changing existing employment terms and conditions while it was subject to a duty to bargain.

### B. "Just and Proper"

Under the second prong of the test in *Automatic Sprinkler,* 55 F.3d at 212 (citing *Specialty Envelope,* 10 F.3d at 1224–25), this Court must next determine whether the issuance of injunctive relief would be "just and proper." [11] "[T]he district court must inquire whether the relief is necessary to preserve the remedial power of the Board and is just and proper 'in the sense of being in the 'public interest' that an injunction issue here pending the NLRB's resolution of the underlying unfair labor practice controversy.'" *Fleischut v. Nixon Detroit Diesel, Inc.,* 859 F.2d 26, 30 (6th Cir.1988) (quoting *Kobell v. Suburban Lines, Inc.,* 731 F.2d 1076, 1096 (6th Cir.1984) (Aldisert, J., concurring)). In other words,

> The primary concern under the just and proper inquiry "is whether such relief 'is necessary to return the parties to [the] status quo pending the Board's proceedings in order to protect the Board's reme-

dial powers under the NLRA, and whether achieving [the] status quo is possible.'"
... The status quo is the state of affairs existing before the alleged unfair labor practices took place.... The primary purpose of the § 10(j) is "to give the Board a means of preserving the status quo pending completion of its regular procedures," which might be ineffective if immediate relief cannot be granted....

*Calatrello v. Automatic Sprinkler Corp.,* 55 F.3d 208, 214 (6th Cir.1995) (citations omitted) (bracketed alterations in original).

This Court will now examine the injunctive relief that Schaub seeks to obtain.

#### 1. Cease and Desist Order

■ This Court will issue a cease and desist order that will be directed to a majority of Schaub's allegations of violations of the NLRA by Spen–Tech because such relief would be "just and proper" under the circumstances. Although this Court has previously suggested that evidence of a continuing violation is a necessary prerequisite to the issuance of a cease and desist order, *see Gottfried v. Mayco Plastics, Inc.,* 472 F.Supp. 1161, 1166 (E.D.Mich.1979), the Sixth Circuit has indicated that the "continuation of unfair labor practices was not a prerequisite for temporary relief" where the employer's "anti-union campaign was so effective that the movement was quickly stifled." *Levine v. C & W Mining Co., Inc.,* 610 F.2d 432, 436 (6th Cir.1979). Elsewhere, the Sixth Circuit has stated that the cessation of unfair labor violations is an insufficient ground upon which to deny interim injunctive relief. *Gottfried v. Frankel,* 818 F.2d 485, 496 (6th Cir. 1987). The Western District of Michigan, when presented with evidence of unfair labor

---

10. Spen–Tech has provided a competing version of the challenged events. (*See generally* Spen–Tech's Resp.) As previously discussed, those issues which require the resolution of conflicting evidence are not to be determined by this Court.

11. This Court has found that "reasonable cause" did not exist as it relates to Schaub's claim which pertained to Spen–Tech's subcontracting activities violated § 8(a)(3). With respect to this alleged violation of the NLRA, the Court reached a negative answer under the two-part test in *Automatic Sprinkler,* 55 F.3d at 212 (citing *Specialty Envelope,* 10 F.3d at 1224–25). As a result, the

Court will not attempt to address the second prong of this test which determines whether injunctive relief would be "just and proper" to restore the status quo with respect to the subcontracting activity. *See id.*

Schaub has also asked this Court to grant a narrowly tailored visitorial clause to permit access to Spen–Tech's records in order to monitor the Company's ongoing subcontracting activities. For the reasons that have just discussed, this Court will not evaluate Schaub's request for a visitorial clause.

practices in *Gottfried v. Purity Sys. Inc.*, 707 F.Supp. 296 (W.D.Mich.1988), that are similar to those alleged unfair labor practices in the case at bar, relied in part upon the language in *C & W Mining* and *Frankel* to grant interim injunctive relief. In rendering its decision, the *Purity* court determined that, although there was no evidence of ongoing NLRA violations, "the effects of unfair labor practices linger[ed]." *Id.* at 302 (citing *Eisenberg v. Wellington Hall Nursing Home*, 651 F.2d 902, 904 (3d Cir.1981)).

This Court finds that the decisions in *C & W Mining Co.*, *Frankel*, and *Purity Systems*, while distinctive in significant ways [12], are persuasive in the instant matter.[13] As such, this Court finds that it would be "just and proper" to issue a cease and desist order in the instant matter which would be tailored to all but one of Schaub's allegations of unfair labor practices by Spen–Tech. Inasmuch as Schaub's application for injunctive relief regarding the 1995 Christmas bonuses appears to be unnecessary in view of the impending hearing before the NLRB, (*see* Spen–Tech's Resp. at 4,) no injunctive relief will be issued.

Finally, this Court finds that it would not be "just and proper" to issue a "blanket" cease and desist order as requested by Schaub, inasmuch as he has provided no evidence to suggest that such relief is warranted by the circumstances.

### 2. Reinstatement Order and Preferential Hiring List

■ The Court will grant a reinstatement order that returns the remaining laid off and discharged employees to active employment with Spen–Tech because Schaub has present-ed enough evidence to support his contention that § 8(a)(3) violations have occurred. This Court has indicated that reinstatement orders are "appropriate" "[w]hen a company's action creates an atmosphere inhospitable to union adherents ... [who] may be reluctant to once again subject themselves to those conditions." *Mayco Plastics*, 472 F.Supp. at 1166.[14] In *Mayco Plastics*, the employer had engaged in numerous activities, many of which were designed to prevent the unionization of its employees. *Id.* at 1162. In particular, the employer, had questioned its employees about their union support, warned them that serious consequences, including more onerous working conditions, would follow a successful election of the union as their representative, and discharged some of the employees because of their organizational activities. *Id.* at 1162–63. Under these circumstances, this Court determined that a reinstatement order would be appropriate. *Id.* at 1166. In particular, the Court ordered an "unconditional reinstatement" of the discharged employees to their former positions. *Id.*

Under the circumstances which have been alleged by Schaub, this Court will grant a reinstatement order, in keeping with *Mayco Plastics*. On the basis of the affidavits which were proffered to the Court by Schaub, Spen–Tech created a hostile union atmosphere at its plant and continues to commit unfair labor practices, having discharged Ridley on January 19, 1996 (Ridley Aff. Mar. 13, 1996 at 1) and declined to reinstate all of the employees whom it laid off in early November 1995. (Ridley Aff. Nov. 27, 1995 at 17.)[15] A reinstatement order would, there-

---

**12.** For example, in *C & W Mining*, the employer's practices were so egregious that it was able to quash union activity within one week of its commencement. 610 F.2d at 435. In this case, Schaub has not made a similar showing here. Although the factual scenario in *Purity Systems* is similar to that presented in the instant matter, *see Purity Systems*, 707 F.Supp. at 299–300, the Western District's ruling has no precedential effect on this Court. Nonetheless, this Court finds *Purity Systems* to be persuasive in connection with the current issues in controversy.

**13.** During a hearing before this Court on April 5, 1996, Spen–Tech agreed to be bound by a cease and desist order that would (1) authorize it to install an additional telephone for its employees, and (2) prevent it from (a) discontinuing employer-provided coffee, (b) conducting surveillance of employees' protected conduct, and (c) halting construction on the new addition to the plant and installing an additional employee telephone.

**14.** In addition, the Western District of Michigan has granted reinstatement orders where § 8(a)(3) violations have occurred. *Purity Systems*, 707 F.Supp. at 302.

**15.** Again, Spen–Tech has presented an alternate version of these facts, which indicates that only two of the original eight employees who were laid off have not yet been recalled. (Spen–Tech's Resp. at 3.)

fore, be "just and proper" under § 10(j) of the NLRA.

In fashioning the reinstatement order, this Court looks again to its previous ruling in *Mayco Plastics*. There, the Court issued an unconditional reinstatement order, partially because doing so would not subject the employer to undue prejudice. In the case that is currently before this Court, Spen–Tech has represented that it had recalled all but Ridley and two of the workers who were laid off in November 1995. A reinstatement order that requires Spen–Tech to recall employees Chewe, Hadsall, Keely, Stewart, and Tuttle would not prejudice Spen–Tech since these employees have already been recalled to work. With regard to Ridley, Schaub has produced evidence that Spen–Tech violated § 8(a)(3) when it discharged him. Hence, this Court shall require Spen–Tech to reinstate Ridley in his former position forthwith. Finally, with respect to the two workers who were not recalled,[16] the Court shall require Spen–Tech to recall both of these workers, to the extent that they are interested and possess the requisite skills to perform the Company's work assignments. *Cf. Kobell v. Menard Fiberglass Prod., Inc.*, 678 F.Supp. 1155 (W.D.Pa.1988) (requiring reinstatement of employees based on "non-discriminatory basis, governed by consideration of the individual's job qualifications" and employer's capacity to accommodate additional employees).

To the extent that this injunctive order does not result in the reinstatement and recall of all laid off employees, Schaub has asked this Court to require Spen–Tech to establish a preferential hiring list for those laid off employees who have not been recalled to work. Such interim relief, if granted, would be "just and proper" for the same reasons that Schaub's request for a reinstatement order is appropriate under § 10(j).

In *Menard Fiberglass*, 678 F.Supp. at 1168–69, the district court ordered the reinstatement for those employees who had been illegally laid off. *Id.* at 1167–68. As for

those employees whom the employer could not accommodate, the court required the Company to place their names on a preferential hiring list. *Id.* at 1168–69. The Court also indicated that its refusal to reinstate the employees or failure to make an arrangement for preferential hire would risk adverse impact on the employees' interest in unionization, *see id.* at 1167, especially where the union was relatively small. *Id.* at 1168.

Applying the ruling in *Menard Fiberglass* to the instant case, it would be "just and proper" to place employees of Spen–Tech who have not been recalled to work on a preferential hiring list. Schaub has made the requisite showing that the reinstatement of the Spen–Tech employees, all of whom were laid off in violation of the NLRA, would be "just and proper" under the circumstances. For the same reasons, Spen–Tech shall rehire employees from this list on a nondiscriminatory basis, governed only by considerations of the employee's individual job qualifications. *See id.* at 1168. Spen–Tech shall recall each of these employees[17] before hiring any new employees to perform the same work.

### 3. Bargaining Order

This Court will grant Schaub's request for the imposition of a bargaining order on Spen–Tech because he has presented a sufficient amount of evidence which demonstrates that a majority of the workers have expressed their support for the UAW. In *Mayco Plastics*, this Court in relying upon *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 597, 89 S.Ct. 1918, 1931, 23 L.Ed.2d 547 (1969), emphasized that a bargaining order merely imposes an obligation upon the parties to negotiate in good faith. This Court also rejected the employer's assertions in *Mayco Plastics* that a bargaining order was unnecessary if an employer, despite having committed previous violations, has subsequently complied with the NLRA. *Id.* at 1168. The Court noted that "once an em-

---

**16.** According to Spen–Tech, Kyle Manning has moved out of Michigan and Jeffrey LaForest does not possess the requisite skills that are compatible with the present employment demands.

**17.** This list shall include Jeffrey LaForest and any other employee who was laid off or discharged in November 1995 and who has not yet been rehired. Spen–Tech shall hire the employees on this list before it selects any other employee with comparable skills.

ployer has succeeded in destroying laboratory conditions necessary for a fair election it may no longer need to violate a cease-and-desist order." *Id.* (citing *Gissel Packing,* 395 U.S. at 612, 89 S.Ct. at 1939).[18] The Court, therefore, felt that issuing a bargaining order would be appropriate. *Id.*

The Sixth Circuit has also approved the issuance of bargaining orders in situations, such as the instant one, where union authorization has been manifested only on the basis of authorization cards. *Levine v. C & W Mining Co., Inc.,* 610 F.2d 432, 436 (6th Cir.1979). The court stated:

> We hold only that when the Regional Director makes a showing, based on authorization cards, that the union at one point had a clear majority and that the employer engaged in such egregious and coercive unfair labor practices as to make a fair election virtually impossible, the district court should issue a bargaining order under § 10(j).

*Id.* (quoting *Seeler v. Trading Port, Inc.,* 517 F.2d 33, 40 (2d Cir.1975)).

In the instant matter, Schaub has produced evidence that ten of Spen–Tech's fourteen employees had signed UAW authorization cards which sets forth a sufficient basis upon which to issue a bargaining order. He has also provided evidence that Spen–Tech engaged in some of the same practices as the employer in *C & W Mining.* Based on the demonstrated facts in this case, it would be "just and proper" for this Court to issue a bargaining order under § 10(j).

IT IS SO ORDERED.

---

**18.** It should be noted that although this Court and the Supreme Court in *Gissel Packing* made reference to "cease-and-desist" orders, both courts did so in the context of discussions relating to bargaining orders. *Gissel Packing,* 395 U.S. at 612, 89 S.Ct. at 1939; *Mayco Plastics,* 472 F.Supp. at 1168. In the decision by the Supreme Court, it referred to a "cease-and-desist order [that would] direct an election or rerun."

*Gissel Packing,* 395 U.S. at 610, 89 S.Ct. at 1938. Inasmuch as the *Mayco Plastics* court made reference to *Gissel Packing* in its decision-making process, it also contemplated a similar sort of cease and desist order which was designed to compel a second election. This language is, therefore, not relevant to the determination by this Court as to whether a cease and desist order for the other violations should be granted.