91 F.3d 144
 153 L.R.R.M. (BNA) 2096
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
M.P.G. TRANSPORT, LTD., Petitioner Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent Cross Petitioner.
 No. 94-6651, 95-5161.
 United States Court of Appeals, Sixth Circuit.
 July 16, 1996.
 
 Before: NORRIS, SILER, and GODBOLD, Circuit Judges.*
 SILER, Circuit Judge.
 
 
 1
 M.P.G. Transport, Ltd. ("MPG") seeks review and the NLRB seeks enforcement of an NLRB decision and order finding that MPG violated federal labor law by threatening employees with plant closure and loss of work and by discriminatorily assigning an employee a long-distance route. For the reasons herein, we enforce the decision of the NLRB.
 
 I.
 
 2
 At its Newark, New Jersey facility, Detroit-based MPG employs drivers to deliver automobiles to dealers. MPG employs Michael Wysocki as president, Joseph Wadena as Director of Automotive Transportation, and Richard O'Connell as manager of the Newark facility.
 
 
 3
 MPG allows drivers to choose among the deliveries to be made with preferences for senior drivers. A driver may refuse assignments. As driver Roy Rappa had the most seniority and preferred shorter trips, he generally chose to make deliveries within 30 miles of the Newark facility but occasionally made deliveries that required him to travel as far as 130 miles. Drivers were paid according to the number of miles travelled and cars delivered. A driver making shorter deliveries earns more pay.
 
 
 4
 In July 1992, after other drivers had approached Rappa concerning union representation, Rappa contacted the International Brotherhood of Teamsters, Local 560, AFL-CIO ("the Union"). The Union sent a letter to MPG stating that Rappa was a leader of an organizing campaign and that the Union would file a representation petition with the NLRB. The letter was posted in "the driver's room" at the Newark facility.
 
 
 5
 Rappa testified, "Well, Mr. Wadena told me that, he said, what are you doing to me? He said, this job I expected to stay the rest of my time. He said, I can't live with a union contract. I'll either close the place down or cancelling [sic] the trucks."[1] Rappa testified that later that day Wadena said, "I'm sorry for jumping on you" and Rappa responded, "I take your apology." Wadena testified that he remembered neither "[t]he exact specifics" of that conversation nor "telling Mr. Rappa that [he] was going to cancel a truck order." Wadena also testified that he "never confronted [Rappa] about the letter."
 
 
 6
 On the morning of July 16, 1992, Rappa made short, local deliveries and when he returned around noon, O'Connell assigned him a longer, ninety-mile delivery to Poughkeepsie, New York. O'Connell claimed that was the only delivery available and Rappa testified that deliveries that require travelling that distance are usually assigned "the night before" for the convenience of drivers. Rappa stated that he had never been required to make a long, afternoon delivery on the day it was assigned, but he did not refuse the assignment. After Rappa made that delivery, Wadena told him that he had been assigned that delivery because it was the only delivery available at the time. Another driver made shorter deliveries that afternoon.
 
 
 7
 On August 12, 1992, the Union filed a charge against MPG alleging violations of Sections 8(a)(1) and (3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and (3). The complaint alleged that MPG had threatened employees with the closure of the Newark facility, induced employees to discontinue support for the Union, and made discriminatory assignments.[2] On August 14, 1992, Wysocki gave a speech to the drivers. He testified, "I flatly denied that we were going to close the terminal. I also denied that the trucks were cancelled.... I indicated that the only thing that would close that terminal would be unprofitability."[3]
 
 
 8
 An Administrative Law Judge ("ALJ") found that MPG had not induced employees to discontinue Union support[4] but had committed unfair labor practices by threatening employees with closure and by making discriminatory work assignments. The NLRB adopted the ALJ's decision and order. MPG has been ordered to not threaten its employees with closing the Newark facility and to not discriminatorily assign long-distance deliveries. It has also been ordered to pay Rappa any lost earnings or benefits he incurred as a result of discrimination.
 
 II.
 
 9
 This court reviews NLRB findings of fact and application of law to those facts to ascertain whether they are supported by substantial evidence. NLRB v. Mead Corp., 73 F.3d 74, 78 (6th Cir.1996) (citations omitted). "Evidence is substantial when, viewing the record as a whole, reasonable minds would find the evidence sufficient to uphold the Board's decision." Id. (citing NLRB v. Spring Arbor Dist. Co., 59 F.3d 600, 604 (6th Cir.1995)).
 
 III.
 
 10
 "[I]t is 'the function of the ALJ to resolve credibility problems.' " NLRB v. Lakepark Indus., Inc., 919 F.2d 42, 44 (6th Cir.1990) (quoting NLRB v. Downslope Indus., Inc., 676 F.2d 1114, 1116 (6th Cir.1982)). The ALJ credited Rappa's testimony. As Rappa's recollection of the discussion with Wadena was contradicted only with Wadena's statement that he did not confront Rappa about a letter, substantial evidence supports the ALJ's finding that those statements were made. The ALJ credited Wysocki's testimony. Wysocki testified that during his address to the drivers he announced that the facility would not be closed and that the truck order was not cancelled. As this testimony was uncontradicted, substantial evidence supports the ALJ's finding that these statements were made.
 
 
 11
 Wadena's statement contains a threat. MPG claims the statement is protected by section 8(c). Section 8(c) provides, in pertinent part: "The expressing of any views, argument, or opinion, or the dissemination thereof ... shall not constitute or be evidence of an unfair labor practice under any of the provisions of this subchapter, if such expression contains no threat of reprisal or force or promise of benefit." 29 U.S.C. § 158(c). "[A]n employer is free to communicate to his employees any of his general views about unionism ... so long as the communications do not contain a 'threat of reprisal or force or promise of benefit.' " NLRB v. Gissel Packing Co., 395 U.S. 575, 618 (1969). Wadena's statements that "this job I expected to stay the rest of my time.... I can't live with a union contract" appear to be an expression of his belief that unionization would result in the loss of his job. That part of his statement is " 'what he reasonably believes will be the likely economic consequences of unionization that are outside his control' " and, as such, is protected by Section 8(c). Id. at 619 (quoting NLRB v. River Togs, Inc., 382 F.2d 198, 202 (2d Cir.1967)).
 
 The Supreme Court has reasoned:
 
 12
 If there is any implication that an employer may or may not take action solely on his own initiative for reasons unrelated to economic necessities and known only to him, the statement is no longer a reasonable prediction based on available facts but a threat of retaliation based on misrepresentation and coercion, and as such without the protection of the First Amendment.... "[C]onveyance of the employer's belief, even though sincere, that unionization will or may result in the closing of the plant is not a statement of fact unless, which is most improbable, the eventuality of closing is capable of proof."
 
 
 13
 Gissel Packing, 395 U.S. at 618-619 (quoting NLRB v. Sinclair Co., 397 F.2d 157, 160 (1st Cir.1968)). Wadena's statement that "I'll either close the place down or cancel[ ] the trucks" implies that Wadena might retaliate by closing the plant "on his own initiative for reasons unrelated to economic necessities." Id. An employer's forthright statement that the plant will close is not protected by section 8(c). Indiana Cal-Pro, Inc. v. NLRB, 863 F.2d 1292, 1298-99 (6th Cir.1988). Wadena's statements were made only to Rappa and there is no evidence that Rappa told other employees of these threats. Nevertheless, "section 8(c) does not protect statements or predictions regarding the effects of unionization if 'their ... reasonable tendency is coercive in effect." Id. at 369 (quoting Peabody Coal v. NLRB, 725 F.2d 357, 363 (6th Cir.1984)).
 
 
 14
 An employer does not commit a section 8(a)(1) violation when commenting to employees that he feared a potential loss of customers if the business is unionized. NLRB v. Pentre Elec., Inc., 998 F.2d 363, 367 (6th Cir.1993).[5] Wadena's statements expressed threats more potentially coercive. Substantial evidence supports the ALJ's finding that Wadena's statement tended to have a coercive effect and thus violated section 8(a)(1). This court may not disturb such findings even "[w]here the evidence supports two conflicting views." W.F. Bolin Co. v. NLRB, 70 F.3d 863, 870 (6th Cir.1995) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); NLRB v. A & T Mfg. Co., 738 F.2d 148 (6th Cir.1984)).
 
 
 15
 In a footnote attached to the ALJ's decision, the NLRB stated, "[W]e find that [Wysocki's] statement [that the facility would not be closed and that the order for new trucks would not be cancelled] did not effectively disavow the prior threat under the criteria set forth in Passavant Memorial Area Hospital, 237 N.L.R.B. 138 (1978)." "[U]nder certain circumstances an employer may relieve itself of liability for unlawful conduct by repudiating the conduct." Wilson Trophy Co. v. NLRB, 989 F.2d 1502, 1511 (8th Cir.1993) (citing NLRB v. Intertherm, Inc., 596 F.2d 267, 276 (8th Cir.1979); Passavant, 237 N.L.R.B. at 138)); see also NLRB v. St. Vincent's Hosp., 729 F.2d 730 (11th Cir.1984) (recognizing same). "To be effective, however, the repudiation must be timely and unambiguous, and specifically address the unlawful conduct. Additionally, the employer must adequately publicize the repudiation to all employees involved. Last, the repudiation should assure the employees that the employer will not interfere with their protected rights in the future." Wilson Trophy, 989 F.2d at 1511 (citations omitted).
 
 
 16
 Wysocki's speech failed to adequately repudiate Wadena's statements because it was given one month after Wadena's statement. See id. (citing Colson Corp. v. NLRB, 347 F.2d 128, 137 (8th Cir.), cert. denied, 382 U.S. 904 (1965); Intertherm, 596 F.2d at 276).[6] Wysocki did not refer to Wadena's statement and did not give any assurances as to future rights protections. See Kinney Drugs, Inc. v. NLRB, 74 F.3d 1419, 1429 (2d Cir.1996) (substantial evidence supported NLRB finding that employer's promise that union supporters would not be fired if union was defeated did not repudiate, but perpetuated original threat); General Indus. Employees Union, Local 42, Distillery, Rectifying Wine and Allied Workers' Intern. Union, AFL-CIO v. NLRB, 951 F.2d 1308, 1312 (D.C.Cir.1991) (finding attempted repudiation ineffective because it had no "acknowledgement of wrongdoing"); Chicago Beef Co., 298 N.L.R.B. 1039, 1990 WL 122480, * 3 ("Given the lack of a specific reference to the Respondent's past action, those strikers on whom the condition had been imposed, or those who knew of its imposition, might reasonably have been left in doubt about the notice's application to them"), enforced, 944 F.2d 905 (6th Cir.1991). As Wysocki's speech did not meet these requirements, substantial evidence supports the NLRB's decision that Wadena's statement was not repudiated.
 
 IV.
 
 17
 Under sections 8(a)(1) and (3), an employer commits an unfair labor practice when, without other, non-pretextual bases, he takes employment actions adverse to an employee because that employee has engaged in union activities. W.F. Bolin Co., 70 F.3d at 870 (citing NLRB v. Transp. Management Corp., 462 U.S. 393, 397-98 (1983); NLRB v. E.I. DuPont De Nemours, 750 F.2d 524, 528-29 (6th Cir.1984)). In " 'cases involving charges of employment actions motivated by antiunion animus and employer protestations of legitimate reasons for the actions' ... the General Counsel must establish a prima facie case that anti-union animus motivated or contributed, at least in part, to [an adverse employment decision]." W.F. Bolin Co., 70 F.3d at 870 (quoting Birch Run Welding & Fabricating Inc. v. NLRB, 761 F.2d 1175, 1179 (6th Cir.1985)). Once a prima facie case is established, the employer must demonstrate that the adverse employment action would have been taken even if the employee had not "engaged in protected activity." W.F. Bolin Co., 70 F.3d at 870; see also Transp. Management, 462 U.S. at 400 ("[P]roof that the discharge would have occurred in any event and for valid reasons amount[s] to an affirmative defense.").
 
 
 18
 In the Union's initial letter to MPG, Rappa was identified as a leader of the union organization drive. Thus the ALJ's finding that "knowledge of Rappa's union activities is clear and unambiguous" is supported by substantial evidence. Wadena's statement to Rappa, discussed supra, is substantial evidence of MPG's anti-union animus. In order to establish a prima facie case, it must be shown that this anti-union animus played some part in an adverse employment decision.
 
 
 19
 As noted, supra, Rappa usually made shorter deliveries. After MPG discovered Rappa's leadership in the union organization drive, he was assigned a longer delivery. Rappa made a short, local delivery on the morning of July 16 and the longer delivery that afternoon. Rappa contends that he would have made more money if he would have been assigned the long Poughkeepsie delivery in the afternoon, allowed to make other shorter deliveries that same afternoon, allowed to "preload" his truck for the long delivery that same afternoon, and then allowed to make the long delivery the next morning. Rappa conceded that, in the past, he had made deliveries that required him to travel as far as Poughkeepsie (or farther) when no other deliveries were available. But Rappa testified that the long delivery assignment he received was a deviation from MPG's past practice because, he stated, "They never give you a trip like this at 12:00 o'clock." Rappa testified that this assignment without the benefit of a prior "preload" was MPG's past practice only "[h]alf a percent of the time" and that he had never been a assigned a long run without the benefit of a "preload."
 
 
 20
 Therefore, if the Poughkeepsie delivery was not the only delivery available when Rappa was available on the day in question and Rappa could have made two other, shorter deliveries that afternoon, the assignment of the long delivery was an adverse employment action.[7] The evidence indicates that another driver made two shorter, local deliveries that day. This is substantial evidence supporting the ALJ's finding that the long delivery was not the only delivery available. That evidence taken with Wadena's admission that Rappa "sometimes" made "three or four" deliveries in a day is substantial evidence that Rappa could have made more than one delivery that afternoon.
 
 
 21
 Therefore, substantial evidence supports the ALJ's findings that anti-union animus existed and that an employment decision adverse to Rappa's interests was made. In order to establish a prima facie case, it must be demonstrated that that animus "motivated or contributed, at least in part, to [an adverse employment decision]." W.F. Bolin Co., 70 F.3d at 870. "Discriminatory motivation may reasonably be inferred from a variety of factors, such as the company's expressed hostility towards unionization combined with knowledge of the employees' union activities ... [and] a company's deviation from past practices...." Id. at 871 (citing Turnbull Cone Baking Co. v. NLRB, 778 F.2d 292, 297 (6th Cir.1985), cert. denied, 476 U.S. 1159 (1986)). The threatening statements of Wadena are substantial evidence of an "expressed hostility towards unionization." When taken with MPG's knowledge that Rappa was a leader of the unionization effort, this is substantial evidence on which a reasonable inference of discriminatory motivation can be made. Id. That Rappa had never been assigned a long delivery without the benefit of a "preload" is evidence of MPG's "deviation from past practices" on which a reasonable inference of discriminatory motive can also be made.[8]
 
 
 22
 As to whether the allegedly discriminatory assignment would have been made despite Rappa's unionization activity, MPG argues only that Rappa was assigned the long delivery out of fairness to other drivers. Without evidence demonstrating that Rappa would have been (or had been) assigned long deliveries based on those sorts of equitable considerations (contrary to MPG's seniority policy) despite his unionization activity, substantial evidence supports the ALJ's finding that MPG cannot show that Rappa would have been assigned the long delivery despite his protected, unionization activities.
 
 
 23
 Therefore, MPG's petition for review is DENIED and the Board's Order is ENFORCED.
 
 
 
 *
 The Honorable John C. Godbold, United States Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [1]
 In regard to "the trucks," Wadena was referring to an order for new trucks for the facility
 
 
 [2]
 Because of these charges, a representation election scheduled for August 15, 1992 was rescheduled and eventually held on January 29, 1993. The Union lost the election and the NLRB certified the results
 
 
 [3]
 The trucks were delivered later that year
 
 
 [4]
 This finding has not been appealed
 
 
 [5]
 The court in Pentre Electric expressly distinguished the statements in Indiana Cal-Pro. 998 F.2d at 371
 
 
 [6]
 In Colson, the Eighth Circuit held that repudiation three weeks after the unlawful conduct was inadequate. 347 F.2d at 137. In Intertherm, the Eighth Circuit held that repudiation two days after the unlawful conduct was timely. 596 F.2d at 276
 
 
 [7]
 He conceded that he would have made $10.00 less that day if he could have made only one short delivery that afternoon but stated that he often multiple deliveries in an afternoon. The argument of MPG rests on the assumption, without explanation or supporting evidence, that Rappa could have made only one delivery that afternoon
 
 
 [8]
 The ALJ found that assigning Rappa the shorter deliveries "would conform with past practice inasmuch as Rappa has been given preference in assignment and his desire for local assignments has been honored." Giving Rappa those assignments would have resulted in a lack of assignments for other drivers. The claims of MPG that depriving other drivers of those deliveries would have amounted to a violation of section 8(a)(3) are beside the point