**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COLONY PRINTING AND LABELING, INC., Respondent.**

**No. 80–2211.**

United States Court of Appeals, Seventh Circuit.

Argued April 13, 1981.

Decided June 15, 1981.

Jonathan Saperstein, N. L. R. B., Washington, D. C., for petitioner.

Thomas O. Magan, Evansville, Ind., for respondent.

Before SWYGERT and CUMMINGS, Circuit Judges, and JAMESON, Senior District Judge.*

SWYGERT, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order finding respondent Colony Printing and Labeling,

---

* The Honorable William J. Jameson, United States Senior District Judge for the District of Montana, is sitting by designation.

Inc. in violation of section 8(a)(1) of the National Labor Relations Act, *as amended*, 29 U.S.C. § 158(a)(1). Because we conclude that substantial evidence supports the Board's conclusions, we grant enforcement.

## I

In response to an organizational campaign initiated by the Muncie Printing and Graphic Communications Union No. 126, the Company sent a letter to its employees which read in pertinent part:

> ... If you sign your name to a union card, you give up the right to talk to us about your hours, your work, your working conditions, your pay, and *everything* else concerning your future and continued employment. If anyone tries to cause you any trouble at your work, or puts you under any kind of pressure to join a union, you should let the company know of it immediately, and we will promptly stop this illegal and immoral practice.
>
> \* \* \* \* \* \*
>
> ... Do not sign if you want to continue to speak for yourself, and be your own person....
>
> \* \* \* \* \* \*
>
> ... When you sign, you give away your right to talk to us about your pay, your benefits, the hours you work, and about your job....
>
> \* \* \* \* \* \*

Don't be fooled into signing misleading union cards. It is said that when you sign such a card, no one other than a Union Representative, or a representative of the National Labor Relations Board will ever see this card. This is not the truth. In many instances, the signed card is disclosed to the company by the union, the NLRB, or both of them. Be careful about what you sign—don't sign ANYTHING unless you KNOW what you are signing and what it might mean to you, your family, or your fellow employees.

(emphasis in original) That letter provided the basis for the Union's charge. The Gen-

eral Counsel of the NLRB issued a complaint against the Company, and both the General Counsel and the Company filed motions for summary judgment. The Board transferred the proceeding to itself and granted the General Counsel's motion finding that the Company had violated section 8(a)(1) by threatening its employees with the loss of their right to speak directly with management about the terms and conditions of employment; by requesting employees to report efforts of union supporters to persuade them to sign authorization cards; and by threatening employees that the Company would discover the identity of card signers and take reprisals against them.

## II

This court has previously held that threatening employees with the loss of their right to speak directly with management if they choose to have a union represent them in collective bargaining is a violation of section 8(a)(1). *NLRB v. Graber Mfg. Co.*, 382 F.2d 990 (7th Cir. 1967); *accord, Tipton Electric Co. v. NLRB*, 621 F.2d 890 (8th Cir. 1980). Section 9(a) explicitly provides that the selection of a collective bargaining representative does not preclude employees from presenting grievances directly to their employers so long as the bargaining representative is given the opportunity to be present. Here the Company stated that signing a union card meant giving up

> the right to talk to us about your hours, your work, your working conditions, your pay and *everything* else concerning your future and continued employment.
>
> \* \* \* \* \* \*
>
> ... Do not sign if you want to continue to speak for yourself, and be your own person....

(emphasis in original) We hold that the Board did not err in finding that language to be a violation.

Next the Board found that the Company had violated section 8(a)(1) by urging employees to report anyone who "tries to cause you any trouble at your work, or puts

you under any kind of pressure to join a union...." In *Lutheran Hospital of Milwaukee, Inc. v. NLRB*, 564 F.2d 208, 211 (7th Cir. 1977), *vacated on other grounds*, 438 U.S. 902, 98 S.Ct. 3118, 57 L.Ed.2d 1145 (1978), this court enforced a Board order because we

> agree[d] with the administrative law judge that the letter . . . invited employees to report the names of union organizers to the director. The letter in no way distinguished between organizing activities that are statutorily protected and conduct that is illegal in asking employees to report cases of "pestering or pressure to join." It would have been reasonable for an employee who received the letter to draw the inference that any organizational activity on behalf of the union would be˙ reported to the director and that the identified participants in the organizational campaign would be punished.

The letter at issue here also fails to distinguish between coercive conduct and lawful organizing activity. It urges employees to report anyone who "puts you under any kind of pressure...." We thus uphold the Board's finding. *Accord, Bank of St. Louis v. NLRB*, 456 F.2d 1234, 1235 (8th Cir. 1972); *NLRB v. Sunnyland Packing Co.*, 557 F.2d 1157, 1159–61 (5th Cir. 1977).

■ Third, the Board determined that the Company violated section 8(a)(1) by threatening to discover the identity of union card signers and take reprisals against them. The disputed paragraph read:

> Don't be fooled into signing misleading union cards. It is said that when you sign such a card, no one other than a Union representative, or a representative of the National Labor Relations Board will ever see this card. This is not the truth. In many instances, the signed card is disclosed to the company by the union, the NLRB, or both of them. Be careful about what you sign—don't sign ANYTHING unless you KNOW what you are signing and what it might mean to you, your family, or your fellow employees.

The Company contends that our decision in *NLRB v. Sparton Mfg. Co.*, 355 F.2d 523 (7th Cir. 1966), and the Sixth Circuit's decision in *NLRB v. Hobart Bros. Co.*, 372 F.2d 203 (6th Cir. 1967), are controlling and preclude enforcement on this issue. We do not agree.

In *NLRB v. Sparton Mfg. Co., supra*, our court considered only the last sentence of the above-quoted paragraph, which in that case was contained in a speech given by the company's general manager. We there concluded that in the absence of any history of antiunion or other coercive conduct by the employer, the Board was unreasonable to rely on that single portion of the speech to find an unlawful threat. The case at bar is distinguishable from *Sparton* because here we are considering the sentence containing the "be careful" message at issue in *Sparton* together with the immediately preceding sentence warning that signed union cards might be disclosed to the company. Taken as a whole, that paragraph could well lead employees to believe that the identity of card signers would˙ probably be disclosed, and that there was a reason such disclosure should be carefully avoided.

Moreover, in our case we have already noted two other parts of the same letter that violate the Act. Thus we cannot say as we did in *Sparton* that the disputed language occurs in the absence of any other illegality.

Although we are not of course bound by the Sixth Circuit's decision in *NLRB v. Hobart Bros. Co., supra*, that case is also distinguishable. The majority in *Hobart* found a likely "legitimate company purpose" in the warning that authorization cards might not be kept secret. There the union had itself initiated the issue of secrecy in its own letter to the employees by promising that the identity of those who signed would not be revealed.

> Like the union's promise of increased economic benefits, its promise of secrecy in signing cards could also be disputed by the company. After initiating this issue in its original message, the union cannot complain if the company seeks to reply thereto.

1372 F.2d at 205.[1] In our case there is no evidence that the company was responding to any union-initiated claim.

Further, as was the case in *Sparton*, the majority in *Hobart* looked to the surrounding circumstances in order to determine whether the language was threatening. Noting that the Board found nothing more to support its interpretation of the letter and that another alleged unfair labor charge had been rejected by the trial examiner, the majority found the evidence insufficient to support the Board's finding of a violation. Here there were two other violations of the Act in the same letter.

Mindful of the fact that we must assess the disputed language from the employee's point of view, *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 617, 89 S.Ct. 1918, 1941–42, 23 L.Ed.2d 547 (1969), we conclude that the Board's interpretation in this case was reasonable. Enforcement is granted in full.

1. Judge Edwards, dissenting in *Hobart*, remarked:

> What legitimate company purpose could conceivably be served by its disputing the union's pledge of secrecy of the employee's signature? The Board found, and I think common sense tells us rightly, that the purpose of the company letter was to tell its employees that fear of economic reprisal was a realistic one, and hence, they should "be careful" about what they signed unless they knew what it meant to themselves and their families.

372 F.2d at 308–09.