106 F.3d 401
 154 L.R.R.M. (BNA) 2352
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
PUBLISHERS PRINTING CO., INC., Petitioner-Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner.
 No. 95-6519, 96-5062.
 United States Court of Appeals, Sixth Circuit.
 Dec. 23, 1996.
 
 Petition for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board, No. 9-CA-31638.
 REVIEW DENIED; ORDER ENFORCED.
 Before: NELSON and DAUGHTREY, Circuit Judges, and COHN, District Judge.*
 PER CURIAM.
 
 
 1
 This case comes to us on a petition for review of an order of the National Labor Relations Board. The Board has filed a cross-application for enforcement.
 
 
 2
 The order in question requires the petitioner, Publishers Printing Co., to rescind the last two sentences in the "unionism" section of its employee handbook and to cease and desist from discriminatorily prohibiting union solicitation, creating an impression of surveillance of union proponents, and coercively interrogating employees about union activity. We conclude that there is substantial evidence to support the findings on which the Board's order was based. We shall therefore deny the petition for review and grant enforcement of the order.
 
 
 3
 * The handbook, which is distributed to all employees, contains a "Statement on Unionism" that concludes as follows:
 
 
 4
 "Also, if anybody should at any time cause any of our employees any trouble at their work or put them under any sort of pressure to join a Union, our employees should let the Company know about it and we will see that this is stopped. Everyone should also know that no person will be allowed to carry on Union Organizing activities on the job and that anybody who does so and thereby neglects his or her own work or interferes with the work of others will be subject to serious disciplinary action."
 
 
 5
 The Board found that the first sentence of this passage encouraged employees to report coworkers' union activities in violation of law. See Mississippi Transport Inc. v. NLRB, 33 F.3d 972, 977 (8th Cir.1994) (by requesting employees to report fellow employees' union activities, an employer interferes with employee organizational rights in violation of § 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1)).
 
 
 6
 Publishers denies that the first sentence encourages employees to report union activity indiscriminately. According to Publishers it merely informs employees that they may seek help if they are faced with undue pressure regarding unionism. The Board found, however, that the rule tended to encourage employees to report the identity of union solicitors who acted in a manner subjectively offensive to the particular employee, whether objectively improper or not, and thus discouraged protected organizational activities.
 
 
 7
 Other courts have agreed that requests for employees to report "trouble" or "pressure" fail to distinguish between coercive conduct and lawful organizing activity and thus invite employees to report the names of any union organizers. NLRB v. Colony Printing Co., 651 F.2d 502, 505 (7th Cir.1981). See also J.P. Stevens & Co. v. NLRB, 638 F.2d 676, 684 (4th Cir.1980). We are not disposed to quarrel with these cases.
 
 
 8
 The Board found that the second sentence was also improper. Although an employer may prohibit union solicitation during working hours, employees may not be prohibited from proselytizing for unions during nonworking time, absent special circumstances. Republic Aviation Corp. v. NLRB, 324 U.S. 793, 803 n. 10 (1945). And an employer may not discriminate against union activity by restricting union solicitation while allowing other types of solicitation. NLRB v. Babcock & Wilcox Co., 351 U.S. 105, 112 (1956).
 
 
 9
 Here the Board found that the handbook could be interpreted as banning union solicitation even during mealtimes and breaks. Publishers disputes this, pointing to a general solicitation policy under which no solicitation of any kind is to occur during work time, defined as excluding breaks and meal periods. Publishers argues that the general policy statement clarifies the meaning of the phrase "on the job" in the sentence at issue here. It seems to us, however, that employees could logically conclude from the handbook that Publishers applies different--and stricter--standards in regulating union solicitation. The union solicitation provision appears at the end of a "Statement on Unionism" declaring that the company is nonunion, that it will oppose unionism by all lawful means, and that anyone who neglects his work or interferes with the work of others because of his union activities "will be subject to serious disciplinary action." The general solicitation policy appears 26 pages later, and it contains no warning of disciplinary action if the policy is violated. We think the handbook can reasonably be read as suggesting that some disciplinary action will be visited on anyone who conducts organizing activities on the job at any time, including breaks, while anyone who neglects his own work or interferes with the work of others in the course of organizational activities on the job will face "serious disciplinary action."
 
 II
 
 10
 Based on an incident involving Wayne Sturgeon, a Publishers supervisor, the Board found that Publishers was creating an "impression of surveillance." In February of 1994 employee Scott Maynard and several other employees met with a representative of Local No. 89, a Teamsters affiliate. Soon thereafter Mr. Maynard began talking about the union and distributing union literature to employees before and after work and during breaks. Mr. Maynard testified that one week after Local 89 appeared on the scene Mr. Sturgeon approached him as he was standing near two other employees. Mr. Sturgeon allegedly told Maynard that he wanted a union card. The testimony of employees Chris Hopkins and Mark Wilcher tended to confirm Maynard's account. Mr. Sturgeon denied that the incident occurred.
 
 
 11
 It is a violation of the Act for an employer to create the impression that employees' union activities are under surveillance. NLRB v. Garon, 738 F.2d 140, 143 (6th Cir.1984). Publishers does not deny that there would have been a violation here if Mr. Maynard's account accurately reflected what happened. Pointing to numerous small inconsistencies in the employees' accounts of the incident, Publishers maintains that it never happened.
 
 
 12
 The testimony of the employees was not inconsistent on the major points, as we read the record. The Administrative Law Judge found that the demeanor of the witnesses lent support to Mr. Maynard's story, and we must accept the ALJ's credibility findings if they are "consistent with a reasonable reading of the record." NLRB v. Lakepark Industries, Inc., 919 F.2d 42, 44 (6th Cir.1990).
 
 
 13
 It is true that the company had fired Mr. Maynard by the time of the hearing, and he might therefore have had an incentive to lie. His testimony was corroborated, however, by that of Messrs. Hopkins and Wilcher, who were still employed by Publishers. We conclude that there was substantial evidence to support the Board's finding that Mr. Sturgeon created an impression of surveillance in violation of § 8(a)(1).
 
 III
 
 14
 Based on another incident involving Mr. Sturgeon, the Board found the company guilty of "coercive interrogation." On Valentine's Day in 1994 Sturgeon distributed roses to several female employees. As Mr. Sturgeon handed flowers to two female sorters, according to the testimony of employee Robert Conner, Sturgeon asked them if they had heard anything about a union being in that area. After the women answered in the negative, Conner testified, Sturgeon told them to let him know if they heard anything about union activity. Mr. Sturgeon denied having said anything along these lines.
 
 
 15
 The ALJ credited Mr. Conner's version of the incident, based on his demeanor and the content of his testimony. It was within the ALJ's province to do so. Although Publishers contends that the testimony contained inconsistencies, the alleged inconsistencies are not such as would justify our vacating the ALJ's findings.
 
 
 16
 Publishers argues that the ALJ should have drawn a negative inference from the General Counsel's failure to call as witnesses the two women to whom Mr. Sturgeon allegedly directed his questioning. There was no indication that the two employees were peculiarly within the control of the General Counsel or the union, however, and no adverse inference was required here.
 
 
 17
 Publishers' final contention is that even if Mr. Sturgeon created the impression that employees' union activities were under surveillance, and even if he coercively interrogated employees, his conduct did not warrant the issuance of a remedial order. We agree that the infractions were minor, and we acknowledge that isolated violations of the Act may not call for the issuance of remedial orders. Nonetheless, it is the Board that has primary responsibility to determine the necessity of a remedial order. Interlake, Inc. v. NLRB, 529 F.2d 1277, 1278 (8th Cir.1976). We are not prepared to say that the Board abused its discretion in the case before us, particularly in light of the handbook.
 
 
 18
 Publishers' petition for review is DENIED, and the Board's cross-application for enforcement is GRANTED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation